##### FOR THE

### COUNTY OF ORLEANS,

##### AT THE

### AUGUST TERM, 1861.

---

PRESENT:

HON. ASA O. ALDIS,
HON. JOHN PIERPOINT,
HON. LOYAL C. KELLOGG, } ASSISTANT JUDGES.
HON. ASAHEL PECK,

---

### JOHN MORRILL v. TOWN OF DERBY.

#### Contract. Practice.

The plaintiff promised the selectmen of the town of D. that if they would discontinue an old road passing through his land and lay a certain other new road to take its place, he would subscribe one hundred dollars towards it, and thereupon the selectmen laid the new road and contracted with K.

to build it, and among other things promised he should have therefor the one hundred dollars subscription by the plaintiff; *held,* that as between the town and K., the town were under obligations to discontinue the old road in order to make the one hundred dollars available to K.

And where, after the new road had been finished and accepted, but before the old one had been discontinued, the selectmen directed the plaintiff to pay the one hundred dollars subscription to K., saying that the old road should be discontinued, and thereupon the plaintiff gave K. his note for that amount; *held,* that if the town neglected and refused to discontinue the old road, the plaintiff might recover of the town for the one hundred dollars, as so much money paid to their use.

Nor would it make any difference that there was an understanding between the plaintiff and K. that K. should not call upon the plaintiff for the note unless the old road was discontinued.

This was an action of assumpsit, tried at the June term, 1861, POLAND, Ch. J., presiding, the declaration containing special and general counts.

Plea, the general issue and trial by jury.

The plaintiff gave evidence tending to prove that in 1855 certain inhabitants of Derby were anxious to have an alteration made in a public highway for the distance of about one mile, by laying a new road for that distance, and discontinuing the old road between the same points.

The effect of such alteration would be to discontinue about one hundred rods of the old road through the plaintiff's farm, which he was obliged to fence upon both sides, while the proposed new route took none of the plaintiff's land. The plaintiff's testimony proved that such change in the road would add at least three hundred dollars to the value of the plaintiff's farm.

The change would carry the highway by the houses of Child and Kelsey, and they as well as the plaintiff favored it strongly. A petition was presented to the selectmen of Derby, signed by L. B. Child, M. M. Kelsey, the plaintiff, and others, dated June 15th, 1855, praying for such alteration.

The plaintiff added to his signature to said petition that he would pay the town one hundred dollars. The selectmen of Derby came out and examined the proposed alteration, but did not consider it of sufficient public benefit to have it done at a greater cost to the treasury of the town than

fifty dollars. An arrangement was thereupon entered into by the selectmen and the persons interested in having such alteration made, as was intended and expected to secure the same at a cost of only fifty dollars to the town. Child agreed to build the road through his land without expense to the town. A subscription payable in labor was raised, amounting to ninety-five days' work, twenty-five of which were subscribed by the plaintiff, and the plaintiff agreed to pay the further sum of one hundred dollars in consideration of having the old road discontinued through his farm.

These sums, together with fifty dollars to be paid out of the treasury of the town, it was supposed would build the new road, and the selectmen proceeded to survey and lay out the new road.

The selectmen at the same time entered into a contract with Moses M. Kelsey to build said new road, for which he was to have the subscriptions payable in work before named, the one hundred dollars to be paid by the plaintiff to be relieved from the old road and fifty dollars to be paid by the town, and this was mutually understood and concurred in by all parties interested.

Kelsey was to have the new road completed by the following June, and it was understood between the selectmen, the plaintiff, Kelsey, and others interested, that as soon as the new road was completed for travel, the selectmen would discontinue the old road. It was understood, also, that the contract between the selectmen and Kelsey for the building of the road was to be reduced to writing, and Mr. Edwards was employed by the selectmen to draw up the contract, and when this was done the same was executed on the part of the selectmen by Ives the first selectman signing the names of all, and at the same time he gave an order on the plaintiff to pay the said one hundred dollars to Kelsey, and also an order to have the labor subscriptions paid to Kelsey, and affixed the names of all the selectmen to said papers.

It did not appear that either of the other selectmen were present, or that they gave any express authority to sign their names to either of said papers, but it did appear that Ives had a general authority and was in the habit of signing the names of

all to papers, where the transactions were authorized by them. The said Kelsey underlet the building of said road, and after the same was completed by his sub-contractors, the selectmen were called upon to accept the same, which they did, by the said Kelsey's agreeing to do certain things upon it, and to keep it repaired the succeeding year. The subscriptions for labor were all paid to Kelsey, and when said road was accepted the selectmen gave Kelsey an order on the treasurer for fifty dollars, and told him to get the one hundred dollars of Morrill. Kelsey told them that the plaintiff might object to paying the one hundred dollars till the old road was discontinued over his land. The selectmen told him to fix it up with Morrill—that it should be made right with him and he should have the old road in June. Kelsey thereupon applied to the plaintiff and the plaintiff gave Kelsey his note for the one hundred dollars, payable to Kelsey, and Kelsey at the same time gave the plaintiff a writing that he was not to pay the note unless the old road through his land was discontinued. This writing was surrendered by the plaintiff to Kelsey before this suit was brought, and Kelsey claimed to be entitled to recover said note of the plaintiff but the same had not been paid at the time of trial.

The plaintiff's evidence tended to prove that Kelsey expended in building said new road more than the full sum of the labor subscriptions, the fifty dollars received from the town, and the one hundred dollars which the plaintiff was to pay for the old road, and that the same was properly expended, and that this had been expended before the plaintiff gave the note to Kelsey. It was conceded that that part of the old road through the plaintiff's land had not been discontinued, but that the same has ever been and still is continued as a public highway, and used as such.

The plaintiff also gave in evidence the record of the survey and opening of the old road by the selectmen of Derby in 1835. Also the records of the proceedings of a committee appointed by Orleans county court on petition of L. B. Child and others, praying for a discontinuance of said old road—discontinuing part, but refusing to discontinue the part through the plaintiff's farm.

The defendants gave in evidence the record of the proceedings of Orleans county court, establishing a highway on petition of E. Cleveland and others, June term, 1836, which survey of highway was admitted to cover the old road in question in this case. They also gave evidence tending to prove that when the plaintiff gave up to Kelsey his agreement not to collect the plaintiff's note of one hundred dollars unless said old road was discontinued, Kelsey agreed not to call on the plaintiff to pay the note unless the plaintiff could collect the amount from the town, and that therefore this suit was really prosecuted for the benefit of Kelsey.

The defendants called Wilson and Morrill, two of the selectmen in 1855, who testified that they had no knowledge that any order was given, or was to be given by the selectmen in favor of Kelsey or Morrill for the one hundred dollars, and never authorized Ives to sign their names to such order, but they conceded that by the contract with Kelsey he was to receive the one hundred dollars which the plaintiff had agreed to pay to have the old road discontinued.

Wilson and Morrill denied that they made any contract with the plaintiff to discontinue the old road, but they conceded that it was fully understood and expected they were to do so, and that they supposed they had power to do so ; and that Morrill was to pay the one hundred dollars in consideration of having the road through his farm discontinued.

They also testified that fifty dollars was all that the town was to pay for building the new road.

The defendants also gave evidence tending to prove that the ninety-five days' work subscribed and paid to Kelsey, and the fifty dollars paid him by the town, properly expended, would have built the new road as well as he built it.

The plaintiff claimed to recover the value of the twenty-five days' work subscribed and paid by him to Kelsey, and also the value of the old road to his farm. The court held that the plaintiff could not recover for the twenty-five days' work, as that was wholly a voluntary payment, nor the value of the old road. But the court intimated that they should instruct the jury that if, when said new road was laid out, and the contract made by

Morrill v. Derby.

the selectmen with Kelsey to build it, it was fully understood that the selectmen were to discontinue the old road through the plaintiff's farm, and that in consideration therefor the plaintiff was to pay one hundred dollars to Kelsey toward building the road, and that relying upon such agreement, Kelsey actually and properly expended the said one hundred dollars in building said road, for which the plaintiff had given his note to Kelsey, and said road had not been discontinued, then the plaintiff would be entitled to recover the same of the town, even though there was an understanding between the plaintiff and Kelsey that Kelsey should not call on the plaintiff to pay said note unless he recovered of the town, and though Wilson and Morrill had no knowledge of the order Ives gave Kelsey on the plaintiff, and gave no authority to Ives to sign their names to the same. Upon this intimation the defendants' counsel consented to a verdict for the plaintiff for the one hundred dollars and interest, with leave to except to such instructions. A verdict and exceptions were taken accordingly.

*Peck & Colby*, for the defendants.

—— *Steele*, for the plaintiff.

PECK, J. In determining this question whether the charge is correct we must take the facts, which the charge of the court requires the jury to find, in connection with the other facts which appeared in the case, as undisputed, and treat the whole as having been found by the jury. Hence there is no objection to the charge on the ground that it makes it unnecessary for the jury to find that Ives had authority to sign the names of the other selectmen to the order he gave Kelsey on the plaintiff for one hundred dollars, as the case shows as undisputed facts that all the selectmen concurred in the agreement by which Kelsey was to have the subscriptions, that the contract was thereafter to be reduced to writing, and that Ives had a general authority to sign, and was in the habit of signing, the names of the other selectmen to papers to carry out transactions to which the others, as in this case, had assented. The charge on this point must be

understood, therefore, as simply not requiring the jury to find in addition to this general authority any special, express or particular authority to sign this particular paper. We think in this sense it was correct as the giving of the order was only an appropriate mode of carrying out the agreement the selectmen had made, and in pursuance of their arrangement to have it reduced to writing.

By the terms of this agreement between the selectmen, Kelsey, and the plaintiff, (saying nothing for the present as to the authority of the selectmen to bind the town,) Kelsey was to build the road, the plaintiff was to pay Kelsey the one hundred dollars, and the town was to discontinue the old road across the plaintiff's land, which, as the case shows, would benefit the plaintiff some three hundred dollars by relieving his farm of the incumbrance of the old road. The town put itself under an obligation to the plaintiff to relieve his farm of the old road, and to Kelsey to discontinue the old road in order to make the one hundred dollar subscription available as it was payable on condition the old road should be discontinued. Kelsey having built the new road and taken this one hundred dollar subscription on the faith of the agreement by the town to comply with the condition on which it was payable, had a right to require the town to comply with this condition so as to make the subscription available, and, on the neglect of the town to do so, had a valid claim against the town for work and labor to the amount of the one hundred dollars. But it is insisted that the town was not bound to do this for the want of authority in the selectmen to bind the town to this stipulation; firstly, upon the ground that the old road having been laid by a committee of the county court the town had no right to discontinue it. It appears it was laid and opened by the selectmen in 1835, and also that it was covered by a survey of a road laid by a committee of the county court in 1836. But supposing the selectmen or town had no right to discontinue it, they had a right to lay the new road and contract with Kelsey to build it, and as Kelsey took this subscription in payment on the faith of the agreement of the selectmen to comply with the condition on which it was payable, and it failed to

Morrill *v.* Derby.

be available for want of authority in the selectmen to comply with the condition, it fails to be a payment, and leaves the town liable to pay the amount in some other way, especially as it appears from the case that the selectmen supposed when they made the contract that they had a right to discontinue it; and it is to be presumed the plaintiff and Kelsey acted under the same supposition, as there is nothing in the case showing that they knew that the road in question was laid otherwise than by the selectmen. The want of authority in the selectmen to discontinue the old road is not a defence which the town can set up against the claim on the part of Kelsey against the town for work and labor in constructing the new road, even if it is an excuse for not specifically performing the stipulation for discontinuing the old road, since the selectmen had authority to lay the new road 'and contract with Kelsey in behalf of the town to build it; and he having performed the labor, which went to the benefit of the town, the town, in default of the selectmen to procure the old road to be discontinued, whether such default is for want of authority to effect it, or for the wrongful neglect of the selectmen, was clearly liable to Kelsey to the amount of one hundred dollars, the jury having found that it was properly expended in building the road. In this condition of the parties when the road was completed by the town through their selectmen, the selectmen paid to Kelsey the fifty dollars the town was to pay and told him to get the one hundred dollars of the plaintiff, saying they would make it right with the plaintiff, and that he should have the old road—having previously given to Kelsey an order on the plaintiff to the same effect This is equivalent to a request on the part of the town to the plaintiff to pay the debt the town owed to Kelsey, or, as the case states, " fix it up with Kelsey," under an agreement that if the plaintiff would do so the town would make it right with the plaintiff, or let him have the old road by the first of June. If the plaintiff and Kelsey have complied with this request of the selectmen on the faith of such promise, the town is liable to the plaintiff on such agreement, and on the principle already stated in reference to the liability of the town to Kelsey. The town were liable to Kelsey, as already stated, absolutely, either to discontinue the old road

so as to make the one hundred dollars subscription available or to pay that amount to Kelsey for work and labor. If the plaintiff and Kelsey have in pursuance of this request of the selectmen made this arrangement by which the plaintiff has paid or satisfied Kelsey's claim against the town and relieved the town from that liability, the town cannot resist the claim of the plaintiff on the promise of the selectmen based on that consideration. If the town can shield itself from liability on the promise for damages for not discontinuing the old road, they are still liable to the plaintiff for the amount of the consideration which the plaintiff parted with, as it inured to the benefit of the town by satisfying their liability to Kelsey. But has the plaintiff satisfied that liability? If the town is still liable to Kelsey, no right of action has accrued to the plaintiff by this arrangement. It was obviously the intention and the fair construction of the request of the selectmen to have Kelsey so fix up or arrange the matter as to relieve the town from their obligation to Kelsey, and substitute therefor a liability to the plaintiff, or, in other words, to substitute the plaintiff as their creditor in lieu of Kelsey. And it is equally clear that the negotiable note given by the plaintiff to Kelsey, and the surrendering of the order of the selectmen by Kelsey to the plaintiff was intended by Kelsey and the plaintiff, to have that effect notwithstanding the verbal agreement or understanding that the plaintiff should not call on Kelsey for payment, unless the plaintiff could collect the amount of the town. But for this verbal understanding it would be clear that the note must be regarded as a payment, and we think that with it it must be treated as a satisfaction of the liability of the town to Kelsey and if so, it is not material to the town that it was accompanied by this agreement; it was such as Kelsey was willing to accept in satisfaction, and we think no legal principle is violated by giving it the effect intended by the parties. It is to be observed that in this view of the case no new indebtedness or liability is created. It merely substitutes the plaintiff for Kelsey as creditor of the town by consent and agreement of the three parties, and this it was competent for the parties to do, even if the note was not technically a payment, if by the arrangement the town ceased to be liable to

Kelsey, or, as it is termed in some of the cases, it was an equitable assignment of the debt, and substitution of a new creditor by agreement of all the parties.

We have already seen that Kelsey had a claim upon the town for work and labor if the town did not discontinue the road. The effect of this arrangement is in the nature of an assignment of this claim to the plaintiff by the consent and request of the town ; —a promise by a debtor to pay the debt to the assignee, enables such assignee to maintain a suit in his own name against the debtor. A promise made before the assignment has the same effect if the assignment is made on the faith of it. In other words the town agreed that if the plaintiff and Kelsey would " fix it up " they would make it right with the plaintiff. The plaintiff and Kelsey did " fix it up," and the town having neglected to perform its promise, the instructions of the court below compel the town to do simply what it agreed to do, that is, " to make it right with the plaintiff," by paying him the $100, which it would have been compelled to pay Kelsey but for this arrangement and substitution made by agreement of all parties—even if they had no power to discontinue the old road.

As to the objection that the new road was not legally or regularly laid, we see no irregularity in the proceedings left in the town clerk's office, that the town can take advantage after having in fact laid the road and contracted with Kelsey to build it, and accepted the road after it was built, and opened and used it two years as a highway—nor was any question of this kind raised in the court below, which of itself is a sufficient answer to this objection.

An objection has been made, though not much insisted on, that the contract to discontinue the old road is void as against public policy. We see no ground for this objection, but it is sufficient to say that the question, not having been raised in the county court, cannot be noticed here.

It is also objected that the plaintiff, if he can recover at all on the facts proved, cannot recover under this declaration. Whatever consideration this question might have merited, had it been made in the county court, not having been there raised it cannot be successfully raised here. When a question of this

character is raised in the county court, the objection may be generally obviated by amendment, and a party is not at liberty to allow the case to go to the jury on the merits without objection to the declaration, and without raising the question whether the proof supports the declaration, and reserve his objections till the case comes into this court. The rule on this subject laid down by ROYCE, J., in *Peck* v. *Thompson et al*, 15 Vt. 643, is quite as favorable to the defendant as the present practice of the court will warrant. It is there said that no objection on the ground of variance not raised below, and which might have been obviated by amendment, is to be regarded, unless it is both apparent upon the record, and of such a character, that the judgment, if affirmed, will fail to protect the parties in reference to the matter actually litigated, when the merits have been tried. This was said in a case in which, as in this, the county court instructed the jury that if they found certain facts proved, the plaintiff was entitled to recover, and the defendant excepted to the charge. There is nothing in this case to bring it within either of the exceptions contained in the rule above stated—for it is quite clear that justice has been done, and equally clear that the judgment in this case will be a full protection to the parties : the defendant cannot hereafter be liable to Kelsey, since by the very terms of the arrangement between the plaintiffs and Kelsey relied on by the defendant's counsel, the plaintiff was to have this remedy on the defendant in consideration of the note he gave, and the note was to become absolute, if the plaintiff recovered the amount of the defendant. Kelsey therefore will be estopped to claim as against the town that he has not got satisfaction by his own agreement : —his remedy will be solely against the plaintiff. This objection for this reason must be overruled, even if it would have availed the defendant, had it been raised in the county court, and this conclusion is the more just as the objection might have been obviated by an amendment, which was within the power of the county court to have allowed—if any amendment was necessary.

Judgment affirmed.