## LANDRY'S Adm'r *v.* DURHAM *et al.*

AMENDMENTS—PRACTICE.—Amendments may be made in the complaint, with the leave of the Court, after the trial is begun, if they are only designed to make the complaint more certain and specific, and do not add a new cause of action, so as to injure the defendant if compelled to proceed.

PRACTICE.—Under a plea of total failure of consideration, a partial failure may be proved and made available.

APPEAL from the *Marion* Common Pleas.

PERKINS, J.—*George Durham* and four others sued *Henry P. Todd*, administrator of the estate of *Daniel Landry*, deceased, averring that one *Ruth Higginbotham*, widow of *James Higginbotham*, had in her hands about 1,100 dollars belonging to plaintiffs; that she afterwards married *Daniel Landry*, and "loaned to him, at different times, some before and some after marriage, in all the sum of 1,050 dollars, for which sum of money [to the amount of 950 dollars] said *Landry* executed his note of hand payable to the children of said *James Higginbotham*, when the youngest one, *Eliza Jane,* should become 18 years of age, [and he also borrowed 100 dollars afterwards, and indorsed it on said note, making 1,050 dollars."]

The parts of the complaint included in brackets were inserted, by leave of the Court, on the trial to make the averment conform to the evidence. We do not see that the defendant could have been injured by the amendment. It only specified two items of which the sum sued for was made up, as evidenced by the note.

The answer of the defendant consisted of the general denial, want of consideration, and payment. Reply in denial of the second and third paragraphs. Trial by jury, verdict and judgment for plaintiffs.

An answer of the statute of limitation of six years was

Landry's Adm'r *v.* Durham et al.

rightly held bad on demurrer, the demand sued for being evidenced by written instrument.

The evidence upon the trial touching the existence of the note, averred in the complaint to be lost, and the consideration of it, being the matters of controversy, tended to show that *Ruth Landry,* formerly *Ruth Higginbotham,* was married to *Daniel Landry;* that a few weeks before she was married she loaned him 350 dollars and took his note; that soon after the marriage she loaned him 600 dollars more, and took his note for that sum; and that afterwards these two notes were canceled, and a note for 950 dollars substituted; that afterwards she loaned *Landry* 100 dollars more, of which a memorandum was made upon the 950 dollar note. The note was made payable to the children of *James Higginbotham,* her former husband. It further tends to show that the money she loaned *Landry* was received by her as follows: before her first husband went to the poor farm he had sold land for 600 dollars, and it was out of this that she loaned *Landry* the 350 dollars. The 600 dollar loan was money he saved while on the poor farm, and it would seem that she may have received some 400 dollars more of her husband's money from *John McFall.* The evidence is somewhat contradictory, but this was for the jury and Court below.

Her husband, *Landry,* destroyed the note against her remonstrance shortly before he died.

She promised her first husband, before his death, to save his property for his children.

Taking one view of the evidence, which the jury may have taken, there is no variance between the complaint and the proof. The complaint alleges that some of the money was loaned before, and some of it after, her second marriage, though perhaps the fact is immaterial.

The 1,050 dollars included in the note may have been no more than the proportion of *Higginbotham's* estate belonging

to his children. The evidence is unsatisfactory. The evidence, if true, and the jury may have believed it, shows that *Landry*, after his marriage with *Ruth Higginbotham*, gave a note payable to the children of her former husband, and that *Ruth* received and held it for them. Now, they knew better than any body else how much those children were entitled to, and were both interested in making the amount as small as possible, and they deliberately fixed it at 1,050 dollars. We say deliberately, because their attention was called to it at every new loan and change of notes, and *Ruth* says the note finally given was without interest, and run till the children were all eighteen, as till then they might be with her and her husband—thus distinctly recognizing the money as theirs.

The point is discussed in the case, whether under an answer of total failure of consideration, a partial failure may be proved and made available as a defence to the extent of such proof.

The provision of the code of 1852, on this point, is the same as was that in former codes, and under those it was held that a partial failure might be taken advantage of under a plea of total failure of consideration. We think that line of decision should be followed. See *Wynn* v. *Hiday*, 2 Blackf. 123, and note.

The Court on the trial gave several instructions to the jury, some of which were correct.

In the motion for a new trial the ground of error in instructions was thus stated: "The instructions given by the Court are contrary to law."

The assignment of error on the point in this Court is thus: "The Court erred in instructions given to the jury."

We have so often decided that such assignments of error would not be noticed that we need not restate the argument, and authorities, not only in our own State but in others, justifying the practice.

*Per Curiam.*—The judgment must be affirmed, with costs and 1 per cent. damages.

*S. Major*, for the appellant.

*R. L. Walpole*, for the appellees.·