## SELLAR et al. *v.* CLELLAND et al.

EVIDENCE — *in action on the case for deceit.* Upon a false affirmation made by defendants as of their own knowledge, concerning a matter of which they had not actual knowledge, the circumstances showing that the matter spoken of was probably better known to defendants than to plaintiffs, the intention of defendants to deceive and defraud plaintiffs is sufficiently made out.

*Where plaintiffs contracted with defendants* to transport certain freight from Fort Harker in Kansas, to Fort Arbuckle in the Indian Territory, and it was alleged that certain false representations were made by defendants to plaintiffs, at and before the making of the contract, respecting the condition of the road or trail between said points, of which the defendants assumed to have knowledge and the plaintiffs knew nothing, an action may be maintained upon proof.

1. That defendants made the representations as of their own knowledge.
2. That such representations were made to induce plaintiffs to enter into the contract.
3. That relying upon the same, plaintiffs did enter into the contract.
4. That the representations were false.

5. That plaintiffs sustained damage, and that such damage was occasioned by reason of the falsity of the representations.

*Where the representations* relate to a road which is distant from the place where they are made, and therefore not open to inspection, the plaintiffs are not bound to inquire into the truth of the statements made by defendants.

Conversations between the parties prior to, and at the time of making the contract, may be received in evidence to prove the alleged representations.

*Whether one who has destroyed a written contract may give secondary evidence of its contents.* A party to a contract who procured it to be destroyed should not be allowed to prove its contents until he has repelled every inference of a fraudulent design in its destruction.

*The rule on that point in the action of case.* In an action based upon false representations, whereby the plaintiffs were induced to enter into the contract which has been destroyed, the gist of the action is the deceit, and it seems that less evidence will be required to repel the fraudulent intent than would be demanded if the action was upon the contract itself.

*Where both parties assent to the destruction.* And where, in such action, it appears that the contract being in possession of one of the defendants was destroyed, upon request of one of the plaintiffs, and by the concurrent act of both parties, there is no reason to suspect that a fraud was intended, and secondary evidence of the contents of the writing may be received.

*Amendment of declaration at the trial.* In such action an amendment to the declaration, whereby the number of defendants was reduced from ten to two, the cause of action remaining the same, may be made upon the trial.

*Of the effect of the amendment upon the issue previously joined.* When such amendment was made, the plea not guilty, previously filed, stood to the amended declaration, and the issue remained unchanged.

*Whether plaintiffs were in fault is a question for the jury.* Plaintiffs having made about one-third of the journey before they were advised of the peril to which their cattle was exposed, whether, in the exercise of ordin·ary prudence and care, they should have turned back to avoid the danger was properly submitted to the jury, and upon the evidence here, their finding will not be disturbed.

DAMAGES — *value of cattle in nearest markets.* To prove the value of cattle lost by disease in an uninhabited country, where there was no market for such animals, evidence of their value in the nearest markets may be received, although such markets are distant 225 miles or more from the place where the cattle were lost.

*The rule as to time and place.* And in such case the plaintiffs are not restricted to a single market, nor to the very time of the loss, but they may give evidence of value in several markets nearest the place where the cattle were lost, and before and after the date of the alleged loss, to enable the jury to determine the value at the time and place of the loss.

*Other and extraordinary elements of damages.* And where plaintiffs were delayed in their journey, and were compelled to purchase, at extraordinary cost, other cattle to supply the place of those which were lost through, and by reason of, defendants' deceit, they may have as damages, not alone the value of cattle lost to them, but the expenses occasioned by the delay, and the difference between the value of cattle purchased by them, and the price which they paid for them.

INSTRUCTION — *should be confined to matter in issue.* The court cannot be required to charge the jury upon matters which are not presented in the evidence.

PRACTICE — *of the order in which evidence shall be put in.* Whether evidence on behalf of plaintiffs, which should have been offered in the first instance, shall be received after defendants have closed their case, is ordinarily in the discretion of the court where the cause is tried, and not a ground for reversal in this court.

*Of the assignment of error in this court.* An objection which is not presented by the assignment of errors, nor in argument, will not be considered.

## Appeal from District Court, Arapahoe County.

THE declaration was in case by Jas. Clelland and Chas. M. Stebbins (appellees), as partners, against John P. Sellar and Edward F. Kellog (appellants), and Manuel Otero, Charles R. Morehead, Eugene B. Allen, David W. Powers, James B. Powers, David B. Powers, Henry L. Newman and Percival G. Lowe, as partners. It alleged, that in the year 1869 the plaintiffs were engaged in the business of transporting freight for hire, and were possessed of a train consisting of sixty yoke of oxen and twenty freight wagons ; that the defendants were engaged in the business of transporting government stores from Fort Harker, sometimes called Ellsworth, in Kansas, to Fort Arbuckle in the Indian Territory ; that to induce the plaintiffs to transport such stores from the said Harker to the said Arbuckle, and contriving to deceive, defraud and injure the plaintiffs, the defendants at Sheridan, Kansas, falsely, fraudulently, and deceitfully, represented to the plaintiffs that the road sometimes called the " Chisholm Trail," leading from Fort Harker to Fort Arbuckle, was not a road over which Texas cattle, so called, or diseased cattle of any kind, had ever passed or been driven, and that, in fact, no Texas cattle had ever passed

over said road, and that said road was entirely free from any and all infectious diseases to cattle, and was then safe to the health and lives of cattle, which representations were false, and that the defendants, at the time of making such representations, knew them to be false ; that the plaintiffs were thereby induced to enter into a contract with defendants to transport from Harker to Arbuckle, 140,000 lbs. of freight at a price named, and did in fact transport a portion thereof; that in consequence of diseased Texas cattle having been driven over said road, and because of the infection to cattle in said road, and in the air, and grass along the same, caused by driving Texas cattle and diseased Texas cattle along said road, 104 head of plaintiffs' cattle sickened and died, and were lost to plaintiffs. The plaintiffs alleged special damages on account of delay in prosecuting their journey, the expense of protecting the stores during the time for which they were detained in the Indian country, the extraordinary price  paid for other cattle with which to remove their wagons from the place where the cattle died, to Fort Arbuckle, and other matters.

The defendants pleaded not guilty, and the cause was brought to trial at the May term, 1873.

At the trial the plaintiffs gave evidence of a bill of lading, which was signed by one of the plaintiffs in behalf of his firm, and by the defendant Kellog in behalf of a firm, the members of which were not named.   It appeared that after the journey had been performed, Clelland, one of the plaintiffs, requested Kellog, one of the defendants, to destroy this instrument, and thereupon Kellog tore the instrument once, and threw it on the floor ; that Clelland, who was present, then picked it up, and after tearing it again, threw it in the stove.   As to the motive of the parties for this, Clelland testified that he requested Kellog to destroy it because he (Clelland) had no copy of it.   Kellog testified that Clelland requested that it should be destroyed because he wished to be relieved from a second trip, to which he was therein bound.   He afterward stated that Clelland claimed his sympathy on account of the losses he had sustained, and

in consideration thereof, asked him (Kellog) to release him (Clelland) from making a second trip. The evidence of Kellog as to the destruction of the bill of lading was not given until the evidence for defense was put in, and secondary evidence as to the contents of that instrument was received in evidence upon the testimony of plaintiff only.

It appeared in evidence on behalf of plaintiffs, that the contract was made at Sheridan, which is a considerable distance from Fort Harker, the point of departure; that at and before the time the contract was made, Kellog made representations concerning the condition of the road, substantially as charged in the declaration, and that plaintiffs would not have entered into the contract but for such representations. That plaintiffs loaded 70,000 lbs. of freight at Harker, and started on the journey to Arbuckle, about July 4, 1869. That upon arriving at the Arkansas river, a distance of about 100 miles from Harker, or Ellsworth, plaintiffs met a large herd of Texas cattle, and thereafter they met numerous herds of Texas cattle, some of which were diseased.

The symptoms of the disease were given, and witnesses testified that it was contagious; that many of the Texas cattle died of it.

Plaintiffs gave evidence tending to prove that 104 head of their cattle died of the same disease between the south fork of the Arkansas river and the north fork of the Canadian, and that such disease was communicated to their cattle by the Texas cattle passing on the road. This point was strongly contested in evidence by the defendants, who afterward introduced much testimony to prove that the disease was not due to the presence of Texas cattle. It further appeared that plaintiffs' cattle died in an uninhabited country, about 70 miles from Fort Sill, and 130 miles from Fort Arbuckle; that, leaving his wagons at that point, the plaintiff Clelland visited Fort Sill and Fort Arbuckle for the purpose of obtaining assistance; that he was unable to procure cattle with which to move his train except by exchanging wagons for cattle at the rate of one wagon for one yoke of cattle, which

was much more than the cattle were worth; that plaintiffs paid an extraordinary price for other cattle with which to move their train, and that they were detained at the place where the cattle died for a considerable time. The prices paid to laborers and the cost of provisions for their use was also given in evidence. It appeared that there was no market for cattle at the places where plaintiffs' cattle died, nor at Forts Sill and Arbuckle, which were the nearest points, and evidence was received of the value of cattle at Salina and Ellsworth, Kansas, which points were about 230 miles distant. At the points last named, sales of cattle were infrequent, and plaintiffs were not confined to the month of August, in which the cattle died, but were allowed to give evidence of the state of the market before and after that time, and in one instance prices early in October were named. The defendants objected to much of the evidence, and the objections were overruled. There was nothing in the evidence to connect any of the defendants, excepting Kellog and Sellar, with the transaction, and after plaintiffs' evidence was in, defendants moved for nonsuit upon that ground. Thereupon the court allowed plaintiffs to amend their declaration, as stated in the opinion, and the motion was denied. The defendants put in much evidence to contradict the evidence offered by plaintiffs, and especially as to the representations alleged to have been made by Kellog concerning the road or trail. After defendants had closed their evidence, plaintiffs were allowed to give further evidence of the value of the cattle lost by them, to which defendants objected that such evidence was not admissible at that time, and the objection was overruled. Defendants presented numerous prayers for instructions, which are sufficiently referred to in the opinion.

The charge of the court was as follows:

The burden of showing by a preponderance of evidence the existence of every material fact necessary to a recovery is upon the plaintiffs.

1. "Plaintiffs must show by a preponderance of evidence (1) that in June, 1869, the defendants were copartners in

the business of transporting government stores from Fort
Harker to Fort Arbuckle. (2) That, in order to induce
plaintiffs to enter into a contract for the transportation of
freight from Fort Harker to Arbuckle, the defendants, or
one of them, acting about a business wherein they were
jointly interested as copartners, made the representations
charged in the declaration, and spoke of the matter as
within his own knowledge. (3) That the representations
charged were made under such circumstances that the plain-
tiffs were entitled to and did accept and confide in them as
true, and on the faith of them entered into such contract,
and that they afterward proceeded to comply, or attempt
to comply therewith. (4) That the representations com-
plained of were false, and that injury and damage has
occurred to the plaintiffs by reason of the falsity of such
representations, and not by reason of the negligence of the
plaintiffs or other causes.

2. "You will first consider whether defendants are or
are not guilty of the deceit charged in the declaration.

3. "If, in June, 1869, the defendants were jointly inter-
ested as copartners in the transportation of government
stores from Fort Harker to Fort Arbuckle, and in order to
induce the plaintiffs to enter into a contract to transport
such freight for the defendants from Fort Harker to Fort
Arbuckle, the defendant, Kellog, represented to the plain-
tiffs, or one of them, that no Texas cattle had been driven
over or upon the road, by which plaintiffs, if they should
accept such contract, must travel ; and that plaintiffs, if they
should accept such contract, would not travel within twenty-
five or thirty miles of the road by and over which Texas
cattle were driven, and declares that he knew this of his own
knowledge, or spoke of it as a matter within his own
knowledge, and if in the same circumstances a man of ordi-
nary prudence would have relied on the same representa-
tions, and if plaintiffs did rely thereon, and relying on
these representations, entered into such contract in the faith
thereof, and proceeded to perform the same ; and if, in fact,
the only road between Fort Harker and Fort Arbuckle was

one upon which Texas cattle were then being driven, and before had been driven, then the defendants are both liable to the plaintiffs for the damage, if any, shown to have resulted to plaintiffs by reason of the falsity of the representations made by defendant Kellog, even though the defendant Sellars had no actual knowledge of the alleged representations at the time, and though neither Sellars nor Kellog had actual knowledge of whether the facts were or not according to the alleged representations.

4. "In determining whether the alleged representations were or were not made, you are to consider what weight and credit is due to the witnesses who have spoken in relation thereto, on the part of the plaintiffs and defendants respectively. In considering this you are to take into account the manner and bearing of the several witnesses in testifying, the apparent probability or improbability of the matter related by them respectively, considering the testimony of each by itself and its apparent consistency or inconsistency with the other testimony in the case.

5. "If you are of the opinion, upon consideration of all the testimony, that the defendant Kellog never made the representations which the plaintiffs allege that he made, you will find the defendant not guilty.

6. "If you conclude, upon consideration of all the evidence, that the defendant Kellog, acting about the business of the defendants, did make the representations sought to be attributed to him as true, of his own knowledge; that the representations were such, and made under such circumstances, that a man of ordinary prudence would, in the same circumstances, have relied upon the same representations as true; and that plaintiffs did rely upon the truth thereof, and on the faith of these representations entered into the contract spoken of; and that in truth the representations said to have been made by Kellogg were false, you will then consider whether the injuries said to have been suffered by the plaintiffs are or are not attributable to the cause to which the plaintiffs have attempted to assign them, *i. e.*, to the fact that the road by which plaintiffs traveled

with their train was one over which Texas cattle had before been driven.

7. " If from the evidence you are of opinion that in many instances American cattle driven over the same road, or feeding upon the same range, over or upon which Texas cattle have before been driven or fed, have been affected with a disease, from which death usually ensues, you will consider the testimony touching this, and the symptoms usually manifested by cattle so affected, and the symptoms said to have been manifested by plaintiffs' cattle, and the result to plaintiffs' cattle of the disease said to have affected them upon the Chisholm trail, in determining whether the alleged sickness and death of plaintiffs' cattle is attributable to the former presence of Texas cattle upon the same road, or to some other cause. You will also consider what was the condition of plaintiffs' cattle prior to starting from Harker, if this appears in evidence, and whether, taking into account the time of their leaving Harker, the fact that plaintiffs' train was loaded, if this is so, the time at which the sickness is said to have first appeared among them, they were or were not up to that time apparently in good health. If, also, it appears from the testimony that in many instances American cattle have been driven or fed upon the same road or range upon which Texas cattle have before been driven, without apparent injury or disease resulting to them, you will also take this into account. If, on considering all the testimony to this point, you are of opinion that the sickness, if any, which affected plaintiffs' cattle, is not attributable to the former presence of Texas cattle upon that trail, you will find for the defendants.

8. " If, however, considering all the evidence upon this point, you are of opinion that the plaintiffs' cattle sickened and died while on the road to Arbuckle, in pursuance of the contract said to have been concluded between the plaintiffs and defendants, and that this sickness was due to the former presence of Texas cattle upon that road, you will then consider whether or not the plaintiffs might have avoided the injuries of which they complain by the exercise

of the same degree of caution, prudence and foresight which a man of ordinary prudence would have exercised if placed in the same circumstances as the plaintiffs were placed.

9. "If the plaintiffs, on reaching the Arkansas crossing, or at any other point of their route before having incurred risk of the injury and damage of which they complain, were informed that the road by which they must proceed to Arbuckle was then thronged with herds of Texas cattle, or that it was the trail or road by which such herds were usually driven, if they then knew the risk, if any, to be incurred by the taking their cattle upon that road, then, if a man of ordinary prudence would, in the like case, in the same circumstances in which plaintiffs were placed, have turned back, the plaintiffs were bound to do so, and proceeding upon this course they assumed the risk of all consequent injury themselves, and the defendants are not chargeable therewith, even though you should find for the plaintiffs upon every other point in the case.

10. "In considering what a man of ordinary prudence and circumspection would have done in the same circumstances, you will take into account the season of the year, the distance which plaintiffs had traveled when first informed that the road by which they must travel to Arbuckle was the trail usually traveled by Texas cattle, the distance they still had to go, the person from whom the information in question, if any, came, whether he was an acquaintance of the plaintiffs, or either of them, or not, whether he did or did not profess to have come over the road, whether the plaintiffs had or had not then incurred any risk of the injuries said to have resulted afterward, whether plaintiffs turning back to Harker must have traveled by a road usually pursued by Texas cattle, or might have avoided the trail of such cattle. If, upon considering the testimony touching these matters, and all other testimony touching this question, you are of opinion that a man of ordinary prudence and circumspection, placed in the same circumstances, would have turned back, then you should find the defendants not

guilty, otherwise you will find them guilty, provided you find for the plaintiffs upon other points in this case.

11. "If you find for the plaintiffs, you will assess and report to the court the amount of damages sustained by the plaintiffs by reason of the wrong complained of.

12. "If the plaintiffs' cattle sickened and died, and their sickness and death is attributable to the former presence of Texas cattle upon the same trail, you may allow to the plaintiffs the reasonable value of such cattle at the time of the loss. If the plaintiffs were from the same cause delayed and hindered in their journey and so were put to an expense in the employing and boarding of their servants which they would not otherwise have incurred, you may allow them for this. If, also, they expended money or transferred and exchanged other property for cattle in the Indian nation with which to continue their journey, and owing to the sparsity of settlements there, or the absence of a market, the plaintiffs were under necessity to pay for the cattle so bought, more than the same were worth, and if a man of ordinary prudence would have acted as plaintiffs did, if placed in the like circumstances, then you may allow the plaintiffs for the difference between the amounts so necessarily expended in the purchase of cattle and the reasonable value of such cattle at the time of the purchase thereof."

The jury returned a verdict for $7,758, and a motion for a new trial having been denied, defendants appealed.

Messrs. CHARLES & PHELPS, for appellants.

Messrs. BELDEN & POWERS, for appellees.

BELFORD, J.   A misrepresentation to be material must be in respect of an ascertainable fact, as distinguished from a mere matter of opinion.   To be binding, it must not only be material, but it must be a determining ground of the transaction ; both facts must concur, there must be false and material representations, and the party seeking relief should have acted upon the faith and credit of such repre-

sentations. It is not, however, necessary that the representation should have been the sole cause of the transaction. It is enough that it may have constituted a material inducement.

An intention to deceive being a necessary element or ingredient of fraud, a false representation does not amount to a fraud at law, unless it be with a fraudulent intent. If a man says what is false within his knowledge, or what he has no reasonable ground for believing to be true, and makes the representation with the view to induce another to act upon it, who does so accordingly to his prejudice, the law imputes to him a fraudulent intent, although he may not have been instigated by a morally bad motive. Kerr on Fraud and Mistakes, 54, 56. It is averred in the declaration, that to induce the appellees to enter into the contract for the conveyance of freight for the appellants, from Fort Harker, in the State of Kansas, to Fort Arbuckle, in the Indian territory, the appellants did falsely, fraudulently, and deceitfully represent that the road, sometimes called the Chisholm trail, leading from Fort Harker to Fort Arbuckle, and over which freight from one place to the other would naturally pass, was not a road over which "Texas cattle," or diseased cattle of any kind, had ever passed or been driven, and that the road was entirely free from all infectious disease to cattle, and was a good and safe road to the lives and health of cattle to travel upon, and transport freight upon, with ox teams. Whereas, in truth and fact, it was not so, etc. It is further averred, that the appellants, when making these representations, knew them to be false. That the appellees were ignorant, and had no means of ascertaining the fact, but relied wholly upon such representations, etc., whereby the damage complained of, occurred, etc.

The record shows that the facts represented to be as above set forth were claimed to be within the actual knowledge of the party making such representations. It is strenuously insisted upon, by the counsel for the appellant, that it is necessary to a recovery that the appellees should show

that the defendants, when making the representations, knew them to be false, or in other words, that an intent to deceive must be established by positive proof.

In regard to representations generally, I conceive it to be necessary for the party relying on the representations to show not only that they are false, but that the party making the same knew them to be false. But when one has made a representation positively, or professing to speak as of his own knowledge on the subject, the intentional falsehood is disclosed, and the intention to deceive is also inferred, or at all events, this is so when the matters falsely represented are peculiarly within the knowledge of the party making them, and are not known to the party to whom they are made. In such a case, the proof would seem to be complete when it was shown that the defendants made the representations ; that they were made to induce plaintiffs to enter into the contract ; that, relying upon the same, they did enter into the contract ; that the representations were false ; that the plaintiffs sustained damage, and that such damage was occasioned by reason of the falsity of such representations. *Shark* v. *Mayer, etc.*, 40 Barb. 256 ; Hilliard on Rem. Torts, 289 ; *Bennett* v. *Judson*, 21 N. Y. 238 ; *Marsh* v. *Falker*, 40 id. 562 ; *Meyer* v. *Amidon*, 45 id. 169 ; *Craig* v. *Ward*, 36 Barb. 378 ; *Hazard* v. *Irwin*, 18 Pick. 108 ; *Hammet* v. *Emerson*, 27 Me. 326 ; *Stone* v. *Dery*, 4 Metc. 156 ; *Lobdell* v. *Baker*, 1 id. 200.

It is further insisted that, by proper diligence, the appellees could have ascertained the truth or falsity of the representations, before entering upon the contract. When the means of knowledge are at hand, and equally available to both parties, and the subject about which the representations are made is open to their inspection, if the party to whom the representations are made does not avail himself of these means and opportunities, he will not be heard to say that he has been deceived by the misrepresentations. If, having eyes, he will not see matters directly before them, he will not be entitled to favorable consideration when he complains that he has suffered from his own voluntary

blindness, and been misled by over confidence in the statements of another. But we do not think the case at bar is of such a character. The record shows that the representations were made at Sheridan, and that the Chisholm trail was a very considerable distance therefrom. Inspection of this road was not possible without a long journey being made for that purpose, and certainly the law would not devolve such a duty. Besides, this trail was through a wild and uninhabited tract. If the subject is a road not in the country where the representations are made, and such representations are made as within the knowledge of the party making them, such person should not be heard to say that another might have known the truth by proper inquiry, and under such circumstances, the argument is the stronger that reliance has been placed on the representations.

No man should be allowed to complain that another has relied too implicitly on the truth of what he himself stated. Kerr on Fraud and Mistakes, 79, 80, 81 ; *Boyce's Ex'r* v. *Grundy*, 3 Pet. 218 ; *Reynell* v. *Sprye*, 1 D., M. & G. 660. Indeed, it is laid down in all of the above authorities, that a man to whom a particular and distinct representation has been made is entitled to rely on the representation, and need not make any further inquiry. He is not bound to inquire, unless something has happened to excite suspicion, or unless there is something in the case, or in the terms of the representation, to put him on inquiry. Mr. Justice JOHNSON, in delivering the opinion of the supreme court in the case above cited, says : "It is said that it ought to have put him on inquiry, but he was in possession of Mr. Boyce's positive assurance to the contrary, and had a right to rely upon that assurance, without inquiry." And Mr. Kerr, speaking to the same point, says : "However negligent the party may have been to whom the incorrect statement has been made, yet that is a matter affording no ground of defense to the other." See *Reynell* v. *Sprye, supra*.

The court allowed the plaintiff to introduce in evidence the conversation which accompanied the making of the contract, and this is assigned for error. When the grava-

men of an action is fraud in inducing the plaintiff to enter into a contract, the rule does not apply that anterior and accompanying stipulations and representations are merged in the contract; but they may be proved by parol evidence. Hilliard on Remedy for Torts, 490 ; *Koop* v. *Horsley,* 41 Barb. 454 ; *Bank* v. *Kennedy,* 17 Wall. 24 ; *Eastman* v. *Bennett,* 6 Wis. 232. Objection is also taken to the admission of parol evidence to prove the contents of the written contract pertaining to the transportation of the freight. It appears that this contract was destroyed by the consent of Clelland and Kellog. It was a destruction effected by their joint labors.

It is insisted that a party seeking to make secondary proof of the contents of writing which he has voluntarily destroyed, or to the destruction of which he has assented, or in which he has participated, must first, by legal evidence, repel all inference of fraudulent purpose. Such, indeed, is the rule. We think, however, that the evidence repels such inference. While the rule is a salutary one, yet it should be so applied as to promote the ends of justice. When no suspicion attaches that the paper has been fraudulently destroyed, and the paper is of that description that no doubt can arise as to the proof of its contents, there can be no danger in admitting secondary evidence. The reasons which Lord COKE assigns for requiring the production of the original are—

1. To enable the court to give a right construction to it from the words.

2. To see that there are no material erasures or interlineations.

3. That any condition, limitation or power of revocation may be seen. *Renner* v. *Bank, etc.,* 9 Wheat. 597 ; *Blake* v. *Flash,* 44 Ill. 304. It is not the written contract to transport the freight which is the gist or gravamen of the action, but the representation as to the character of the road. Mr. Kerr, page 69 of the work above cited, says :

" A representation is not a part of the written instrument, but is collateral to it and entirely independent of it." It

would, therefore, seem to me that, when the action rests on the false representation, the same strictures should not apply to the proof of the written contract as when the written contract is itself the foundation of the action. Be this as it may, we think the court, under the proof adduced as to the circumstances attending the destruction of the written instrument, committed no error in receiving parol evidence as to its contents. Clelland positively denies that any bad faith was used in procuring the destruction of the instrument, and Kellog discloses none. During the progress of the trial the plaintiffs were permitted by the court to file an amended declaration. The original declaration charged that John P. Sellar, Edward F. Kellog, Manuel Otero, Charles R. Morehead, Eugene B. Allen, David W. Powers, James Powers, David B. Powers, Henry L. Newman and Percival G. Lowe, were partners, and that Kellog, on behalf of them as well as of himself, made the representations complained of. The amended declaration omitted the names of all the defendants except Sellar and Kellog. The cause of action in the amended declaration was the same as that set forth in the original. The appellants insist that the court erred in permitting the amendment, and that, upon the failure to show that all the defendants named in the original declaration were partners, it should have sustained the motion made for a nonsuit. Our statute on the subject of variances and amendments is taken from the statutes of Indiana, and I have carefully examined the decisions of that court to ascertain what construction they have placed upon it, and with the following result : The granting of leave to amend the pleadings while a cause is on trial is a matter within the sound discretion of the court, and unless it appears that the discretion has been improperly exercised, the supreme court will not notice the ruling. *Volty* v. *Newfert*, 17 Ind. 187. Amendments may be made in the complaint with the leave of the court after trial begun, if the amendment does not add a new cause of action so as to injure the defendants. *Landig's Adm'r* v. *Durham*, 21 Ind. 232. An amendment of a complaint by leave of the court, pending

a trial, if the amendment added nothing to the material averments of the complaint, could not be a fatal error, nor in such case could the failure to reswear the jury after such amendment. *Crassen* v. *Sworeland,* 22 Ind. 427.

The great object of a trial is to secure justice to the parties engaged in the suit. Substantial rights should never be sacrificed to mere forms, and amendments should at all times be liberally allowed when they do not lead to surprise and injury. It is no uncommon thing in actions of tort to charge numerous persons with the commission of a wrong and then take judgment against one, or during the trial to enter a *nolle prosequi* as to some and proceed against the rest. The only substantial change made by the amended declaration is in the number of parties. The cause of action remains the same. In the original declaration Kellog is charged with having made the representations, and it is so charged in the amended declaration. The plea of not guilty, the only plea to the action, was filed, and it was not necessary to file it again. There it stood for the defendants' benefit, under which they could give any conceivable matter of defense, and which the record shows they did. *Eames* v. *Morgan,* 37 Ill. 272.

There is no pretense that the amendment in any manner prevented the defendant from making his defense, and when it appears that he suffered no injury, he should not be heard to complain. It is a well-settled rule in equity practice that when a suit has been instituted for the purpose of setting aside a transaction on the ground of fraud, the bill will not be suffered to fail because the complainant has incorrectly and untimely alleged a third person to have been a participator and joint actor in the fraud. Kerr on Frauds, etc., p. 382 ; *Reynell* v. *Sprye, supra.* The same just principle should find a lodgment and recognition in a court of law, especially when we have statutes so broad as those on the subject of amendments and practice. See acts of 1872, p. 118 and 99.

We are, therefore, of the opinion that the court committed no error in allowing the amendment.

It is claimed by the appellants that, had the appellees exercised reasonable care when they found that Texas cattle were traveling the Chisholm trail, the injury would not.have happened; that it was the duty of the appellees to retrace their steps, etc.

Even when false representations have been made, the party to whom they are made is not justified in continuing his reliance upon them when the evidence of their falsity stares him in the face, unless it should appear that to retract is as dangerous as to advance.   When it became known to appellees that the representations made by Kellog were false, they were fully one-third of the way on their journey to Fort Arbuckle.   The distance from Fort Harker, the place of starting, to the Arkansas river, is one hundred miles.   The Texas cattle were met while crossing this river, and at this point Clelland gained his knowledge that Kellog had misrepresented the fact, and misstated the true condition of the road.   He was then in the midst of the peril, and in the exercise of due prudence he had a right to weigh the probable danger of moving forward or backward.   He may have been at fault in his judgment when he concluded to go forward, but if he acted as an ordinary prudent man would act under such circumstances, his conduct must be regarded as blameless.   The question was fairly left to the jury, by instructions which are not open to censure, and the jury having resolved the points against the appellants, we must abide their finding.

A more difficult question is presented on the subject of the true rule of damages in such cases.   No uniform test or rigid rule fixes the extent of compensation in actions in the nature, either of trespass or case for injuries to property. Different measures of redress may be obtained for the same injury, under different circumstances.   What is compensation to the defendant; what would make his loss good to him under the situation, under which he was placed at the time the injury occurred? is the inquiry; and in determining it, all material and relevant circumstances should be considered.   Sedg. on Damages, 6th ed., n. 2, p. 553.

At the point where the cattle died, there was no market, and their value at that point could not be determined. Fort Sill, distant some seventy miles, was the nearest point, but it does not appear that there was any market for American cattle at that point. Ellsworth was distant two hundred and twenty-five miles from the point the cattle died, and it appears, from the evidence, that no American cattle were being sold there in August. Some were sold in October. Salina is twenty miles east of Ellsworth, and this appears to be the only point where there was a market at the time the cattle died. The court allowed evidence as to the value of American cattle at this latter point, and this is complained of. We think the admission of this evidence was correct, and fully within the rule laid down in *Gregory* v. *McDorrell*, 8 Wend. 435 ; *Dana* v. *Felder*, 2 Kern. 40 ; *Berry* v. *Dwinal*, 44 Me. 267 ; *Dubois* v. *Gloub*, 52 Penn. St. 238 ; *Savercool* v. *Farwell*, 17 Mich. 308.

In *Durst* v. *Burton*, 47 N. Y. 175, it is held that a reasonable range of time is allowed, in which to average the price (3 Hill, 333), so the price at other places may be shown, under some circumstances, for the purpose of proving the value at the designated place. 22 Barb. 154. "And to some extent," the court says : "This class of evidence is within the discretion of the court."

The price at Salina was necessarily some guide to a determination of the value at the point where the cattle died, and, therefore, receivable ; so also, the price of cattle at Ellsworth in October and November.

On the subject of damages, the court gave the jury the following instruction : "If the plaintiffs' cattle sickened and died, and their sickness and death are attributable to the former presence of Texas cattle upon the same trail, you may allow to the plaintiffs the reasonable value of such cattle, at the time of the loss. If plaintiffs were, from the same cause, delayed and hindered in their journey, and so were put to expense in employing and boarding of their servants, which they would not otherwise have incurred, you may allow them for this. If, also, they expended money,

or transferred and exchanged other property for cattle in the Indian nation, with which to continue their journey, and owing to the sparsity of settlements there, or the absence of a market, the plaintiffs were under the necessity to pay for the cattle so bought, more than the same were worth, and if a man of ordinary prudence would have acted as plaintiffs did, if placed in the like circumstances, then you may allow the plaintiffs for the difference between the amount so necessarily expended in the purchase of cattle, and the reasonable value of such cattle at the time of the purchase thereof."

The recovery of consequential damages in actions for torts is not subject to the same limitations that are applied to actions of contract. In the former class of cases the question is, not whether the damage entered into the consideration of the parties in advance, but simply whether it is fairly and directly the result of the injurious act. The plaintiff would not only be entitled to recover the reasonable value of the cattle that died, but also the value of his care, attention, and expense in attempting to preserve them. If, in order to remove his wagons and freight from the place they were left, by reason of the death of the cattle, to Fort Arbuckle, the point of destination, or to Fort Harker, the point of starting, it was necessary to buy other cattle, and if, owing to the absence of a market, he was compelled to pay a higher price than would have been necessary at a marketable point, and these results sprung from the original illegal acts of the defendants, then the difference in value would seem to be a legitimate subject of damage. To lay down any other rule would deprive the plaintiffs of that measure of indemnity and compensation which the law constantly attempts to afford the injured. *Wentz* v. *Morrison*, 17 Tex. 372.

It would, therefore, seem that the instruction is not open to objection. After the defendants had closed their case, the court permitted the plaintiffs to introduce witnesses to establish the value of the cattle lost by the plaintiffs, and this is assigned for error. The objection is one as to time,

and not as to pertinency. The evidence would have been admissible if offered before plaintiffs closed their case. Its introduction afterward was a matter of discretion, and is not assignable for error. It is a practice, however, that should not be greatly encouraged. The defendants asked the court to instruct the jury that if, after the plaintiffs' return from Fort Arbuckle, the contract mentioned in the declaration was destroyed, and the plaintiffs released from its further fulfillment, and that such destruction of said contract and release therefrom was so made in consideration of the losses sustained by the plaintiff, then the jury should find for the defendants.

This instruction the court declined to give. We have carefully examined the evidence on this subject of release, and find nothing on which this instruction could rest. A question has suggested itself to us, as to the joint liability of the defendants, but inasmuch as it was not raised in the court below, nor included in the assignment of errors in this court, nor mentioned in the argument of appellants' counsel, we have declined to consider it. *Moril* v. *Derby*, 34 Vt. 449, 450 ; *Harris* v. *Plant & Co.*, 31 Ala. 644.

It appearing that the case has been fairly tried on its merits, that the law was fairly applied, and no cause appearing why the judgment should be disturbed, it is accordingly

*Affirmed.*