Harry H. TRUSSELL et al., Plaintiffs,

v.

UNITED UNDERWRITERS, LTD., a Colorado corporation, et al., Defendants.

Civ. A. No. 8170.

United States District Court
D. Colorado.

April 21, 1964.

Dawson, Nagel, Sherman & Howard, Raymond J. Turner, and Frank P. King, Denver, Colo., for plaintiffs.

Lohf, Moran, Murphy & Barnhill, Ernest W. Lohf, Denver, Colo., for United Underwriters, Ltd.

Edison & Berman, Denver, Colo., for Clinton D. Buchner.

Rexford L. Mitchell, Rocky Ford, Colo., for Albert C. Pantle and Ross Belew.

Hindry, Erickson & Meyer, Denver, Colo., for Milo Steele.

Ben W. Fann, Colorado Springs, Colo., and Lawrence E. Addy, Security, Colo., for C. Douglas Andrews.

Jorge E. Castillo, Denver, Colo., for William Joss.

Lesher, Schmidt & Van Cise, Denver, Colo., for Pete Franzman.

DOYLE, District Judge.

The plaintiffs in this case are numerous individual purchasers of the stock of United Underwriters, Ltd. The separate defendants are United Underwriters, Ltd. and several individuals who, allege the plaintiffs, are associated with and control United Underwriters, Ltd. In their complaint the plaintiffs have stated five separate claims for relief which we will examine in turn.

## THE CLAIMS

*First*:

The first claim is said to arise under § 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 promulgated pursuant thereto. As will later be seen this claim is insufficient in that it contains no allegation that the misleading statements and half-truths allegedly promulgated by the defendants were promulgated knowingly or intentionally.

The affirmative misrepresentations alleged in paragraph four of the first claim for relief are as follows:

a. That the stock sold by the defendants to the plaintiffs was worth eight dollars per share.

b. That the price of the stock would go up in value in the near future.

c. That the price of the stock would double in two years.

d. That the price of the stock would go up to twelve dollars per share in six months.

e. That the sellers would be able to resell in the event the purchaser wanted to trade.

f. That a market for the stock existed.

g. That the stock would be listed on a national securities exchange.

h. That the company was a sure thing.

i. That no one except one woman had ever asked for their money back, but if a person wanted it back, he could get it back without expense.

In paragraph four, then, the plaintiffs itemize the affirmative misstatements and half-truths allegedly promulgated by the defendants. In paragraph five the plaintiffs shift ground. There they allege neither affirmative misstatement nor intentional concealment; nor do they allege that sort of partial disclosure which would amount to the promulgation of half-truths. They allege, rather, substantially total non-disclosure. There was, allege the plaintiffs:

a. A failure to disclose the respective provisions of the common and preferred stock; specifically, to disclose provisions relating to payment of dividends, voting rights, and liquidation, dissolution or winding up.

b. No disclosure concerning underwriting expenses, commissions payable and other expenses of the offering.

c. No disclosure concerning the use of proceeds or the purposes for which proceeds were to be used.

d. A failure to disclose financial statements.

e. No disclosure concerning the then current earnings or loss per share on the stock.

f. No disclosure concerning the persons who controlled the corporation, or the basis upon which they controlled it.

g. No disclosure of the details of acquisition of related companies.

h. No disclosure concerning competitive conditions in the various areas in which the company and its affiliates operated.

i. No disclosure concerning remuneration of officers and directors of the company.

The signficance of this itemization concerning which no statements were made lies in the fact that *all* material statements made by the defendants are alleged to have been misleading—even if they were true—because of the defendants' failure to make any disclosure with respect to the matters enumerated in paragraph five.

*Second:*

The second claim incorporates both the substantive allegations made in the first claim and the statement that the claim arises under § 10(b) and Rule 10b–5, but adds an allegation that the misleading statements and half-truths promulgated by the defendants were promulgated with full knowledge of their falsity, with full knowledge that they would be relied upon by the plaintiffs, and that plaintiffs did rely thereon to their detriment. The second claim, as we shall see, does state a claim arising under Rule 10b–5(2).

*Third:*

The third claim for relief contains a patent internal contradiction in that it is alleged to arise both under § 10(b) and under certain sections of the Kansas Blue Sky Law. If the incorporated allegation that this claim arises under § 10(b) be regarded as inadvertent surplusage it is possible to read the third claim as one which states a cause of action which arises under the Kansas Blue Sky Law. In the exercise of pendent jurisdiction this Court may be able to grant relief thereunder, but that question we do not now decide. Without dismissing the claim we reserve judgment on the question whether this claim will ultimately be seen to state a claim upon which relief can be granted.

*Fourth:*

The fourth claim incorporates both the substantive allegations made in the first claim and the statement that the claim arises under § 10(b), but adds an allegation that the misleading statements and half-truths promulgated by the defendants were promulgated with full knowledge of their falsity and with full knowledge that they would be relied upon by the plaintiffs. This claim, however, is duplicative of the second claim. The fourth claim differs from the second claim only in that it adds the further allegation that the defendants owed a legal duty to the plaintiffs to disclose full, complete and accurate information, that defendants negligently failed to perform that duty, and that as a proximate result of this alleged breach of duty plaintiffs have been injured. As will later be seen, an allegation of mere negligence does not, in our view, state a claim arising under § 10(b) on which relief can be granted. Apart from that, however, it must be questioned whether the complaint sufficiently alleges the existence of a duty to disclose full, complete and accurate information.

A distinction must be drawn in this context, between active, intentional concealment on the one hand, and non-disclosure in the buyer-seller relationship on the other, as is recognized in §§ 550 and 551 of the Restatement of Torts (1938). Loss has summarized the applicability of this distinction to cases of alleged non-disclosure in the sale of securities in these words:

" * * * It is now quite clear that a half-truth is as bad as an outright lie * * *. In 1941, for example, the Supreme Court of the United States, applying Iowa law in a deceit case involving an allegedly misleading prospectus, approved the view of the American Law Institute to the effect (in the Court's paraphrase) that 'a statement of a half truth is as much a misrepresentation as if the facts stated were untrue.' * * * [Equitable Life Insurance Co. of Iowa v. Halsey, Stuart & Co., 312 U.S. 410, 424–26, 61 S.Ct. 623, 85 L.Ed. 920 (1941)]

"At the same time, there is still no common law liability in deceit for complete non-disclosure, as distinguished from a half-truth unless the one party to a business transaction 'by concealment or other action intentionally prevents the other from acquiring material information,' [Restatement of Torts, § 550], or the one party is under a duty to the other to exercise reasonable care to disclose the matter in question 'because of a fiduciary or other similar relation of trust and confidence between them.' " [Restatement of Torts § 551(2) (a)]. 3 Loss, Securities Regulation 1433–34 (2nd ed. 1961)

██ This distinction is not unique to common-law deceit. Section 17(a) (2) of the Securities Act of 1933, as well as Rule 10b–5(2), are specifically aimed at half-truths, as distinct from complete omissions. It is Section 11 of the 1933 Act which creates civil liability for non-disclosure as such, in connection with registration statements which Section 5 of the 1933 Act requires be filed. Neither Section 17(a) (2) nor Rule 10b–5(2), however, requires a seller "to state every fact about stock offered that a prospective purchaser might like to know or that might, if known, tend to influence his decision." Otis & Co. v. S. E. C., 106 F. 2d 579, 582 (6th Cir. 1939). Plaintiffs do allege that defendants "owed a legal duty to the plaintiffs to disclose full, complete and accurate information," but the basis of the alleged legal duty is not set forth, and is not apparent to us. No violation of Section 5 of the 1933 Act is alleged; and within the contemplation of Section 551 of the Restatement of Torts it is not apparent from the complaint that there was any existing relationship between the various plaintiffs and the defendants other than that of buyer to seller—from which no fiduciary duty of full disclosure arises.

*Fifth:*

The fifth claim incorporates both the substantive allegations made in the first claim and the statement that the claim arises under § 10(b) and Rule 10b–5, but adds an allegation that "[t]he acts of the plaintiffs [*sic*] complained of constituted a device, scheme or artifice to defraud plaintiffs and further operated as a fraud or deceit upon the plaintiffs in connection with purchase of the securities in question." With the addition of this allegation the fifth claim does state a claim arising under Rule 10b–5(1) and (3).

## THE QUESTION

The separate defendants have moved to dismiss or strike the various claims for relief, or alternatively, for an order requiring more definite statement. The allegations with which we seriously have to deal on defendants' motion to dismiss are those which are stated by the second and fifth claims for relief. Plaintiffs eschew reliance on any civil remedy derived from the Securities Act of 1933. Their position is that they are free to assert claims for relief under § 10(b) of the 1934 Act notwithstanding the fact that the acts of the defendants alleged to give rise to civil liability under § 10(b) might also give rise to civil liability under the express civil remedy provisions of the Securities Act of 1933. Defendants assert, to the contrary, that a claim sought to be maintained by a defrauded *purchaser* of securities (other than governmental or bank securities), seeking an implied civil remedy under the Securities Exchange Act of 1934, must be construed as stating a claim, rather, arising under the express civil remedy provisions of the 1933 Act if those express civil remedy provisions are applicable to the acts alleged to have been committed. The Court is called on to decide, apparently as a matter of first impression in this Circuit, whether and under what conditions an aggrieved purchaser of securities may maintain an action under § 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5, promulgated pursuant thereto, when he also has available the express civil remedies created by the 1933 Act.

## THE DEVELOPING REMEDY

Both the first and fifth claims allege that defendants violated provisions of Rule 10b–5, 17 C.F.R. § 240.10b–5 (1949), which provided:

*"Employment of manipulative and deceptive devices by any purchaser of a security.*

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange:

"[1] To employ any device, scheme or artifice to defraud.

"[2] To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

"[3] To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security."

This rule, promulgated by the Securities and Exchange Commission in 1942, is an implimentation of Section 10(b) of the Securities Exchange Act of 1934, which provides:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

\* \* \* \* \* \*

"(b) To use or employ, in connection with the purchase or sale· of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the

Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

It is true that Rule 10b–5 does speak of "any person" and "in connection with the purchase or sale of any security" in the body of its text. The heading: "Employment of manipulative and deceptive devices by any *purchaser* of a security" recognized however that the Rule, when promulgated, was designed to provide sanctions applicable against *purchasers* of securities. This had come to be necessary because the Securities Act of 1933, although providing for sanctions applicable against *sellers* of securities—including express civil remedies available to defrauded purchasers, failed to declare unlawful "fraudulent" conduct on the part of purchasers or give a defrauded seller any remedy at all. The general "anti-fraud" provision of the 1933 Act which thus proved inadequate is Section 17(a), which provides:

"It shall be unlawful for any person *in the offer or sale* of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—

"(1) to employ any device, scheme or artifice to defraud, or

"(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

"(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit *upon the purchaser*." [Emphasis added.]

In his opinion in Birnbaum v. Newport Steel Corp., 193 F.2d 461 (2nd Cir. 1952), Judge Augustus Hand analyzed the scope and meaning of Rule 10b–5 as follows:

"While the Rule may have been somewhat loosely drawn its meaning and scope are not difficult to ascertain when reference is had to the scheme of SEC Regulation and the purpose underlying the adoption of [Rule 10b–5]. Prior to its adoption the only prohibitions against fraud in the sale or purchase of securities were contained in Section 17(a) of the 1933 Act * * * and § 15(c) of the 1934 Act * * * Section 17(a) of the 1933 Act only made it unlawful to defraud or deceive *purchasers* of securities, and Section 15(c) of the 1934 Act dealt only with fraudulent practices by security brokers or dealers in over-the-counter markets. No prohibition existed against fraud on a seller of securities by the purchaser if the latter was not a broker or a dealer. Consequently, on May 21, 1942 the SEC adopted Rule [10b–5] to close this ' * * * loophole in the protections against fraud administered by the Commission by prohibiting individuals or companies from buying securities if they engage in fraud in their purchase.' SEC Release No. 3230, May 21, 1942. * * * The SEC's press release, above quoted, which announced the Commission's adoption of Rule [10b–5], shows that the Commission was attempting only to make the same prohibitions contained in Section 17(a) of the 1933 Act applicable to purchasers as well as to sellers. That such was the only purpose of Rule [10b–5] is made abundantly clear when the language of the Rule is compared with the lanuage of Section 17(a); the Commission simply copied Section 17(a), adding the words 'any person' in place of 'the purchaser' and a final clause 'in connection with the purchase or sale of any security.'" 193 F.2d at 463.

It soon became settled law, however, that Rule 10b–5 did more than provide the SEC with injunctive and criminal

sanctions applicable against *purchasers* of securities. Originating what has come to be known as the Kardon doctrine, Judge Kirkpatrick in the Eastern District of Pennsylvania, held in Kardon v. National Gypsum Co., 69 F.Supp. 512 (E.D.Pa.1946), that a civil remedy in favor of a defrauded *seller* could be implied from the prohibitions of Rule 10b–5 on the general principle of tort law that violation of a provision of a criminal statute can, unless expressly or impliedly negatived by the statute itself, give rise to a civil remedy in tort. Restatement of Torts § 286 (1934). It came to be generally held, in addition, that violation of Rule 10b–5 by a seller could give rise to an implied civil remedy in tort available to a defrauded *purchaser*.[1] The reasoned genesis of this doctrine came in the case of Fischman v. Raytheon Mfg. Co., 188 F.2d 783 (2nd Cir. 1951). There Judge Frank was confronted with a somewhat unique situation in which it seemingly appeared that a defrauded purchaser was without a remedy under the 1933 Act and that it would be just to permit him an implied remedy under Rule 10b–5 also.

The reasoned conclusion of Judge Frank in Fischman v. Raytheon Mfg. Co. was that a defrauded purchaser who appeared to be without a remedy under the 1933 Act could have an implied remedy under Rule 10b–5—*when he added the ingredient of fraud* to an allegation of conduct actionable under the express civil remedy provisions of the 1933 Act. In Fischman the plaintiff purchasers were both preferred and common stockholders. The complaint consisted of two causes of action. The first was based on Section 11 of the 1933 Act, alleging misstatements and non-disclosure in a registration statement which covered the preferred stock alone. The second cause of action incorporated most of the same allegation, but added Section 10b–5 language and sought an implied remedy under the 1934 Act. The trial court dismissed the first

cause of action with respect to the common stockholders because the common stock was not the subject of a registration statement. Fischman v. Raytheon Mfg. Co., 9 F.R.D. 707 (S.D.N.Y.1951). On appeal the common stockholders abandoned the first cause of action, and the preferred stockholders abandoned the second. The question on appeal was primarily, then, whether the common stockholders (who did not have a remedy under § 11 of the 1933 Act as did the preferred stockholders) could state a good cause of action under § 10(b) of the 1934 Act. The Court of Appeals for the Second Circuit allowed the action of the common stockholders to be brought under § 10(b) of the 1934 Act if fraud could be proved, reasoning that if this were not allowed a corporation could issue a few shares of preferred stock and a fraudulent prospectus. It would then issue common stock and the common stock purchasers, relying on the prospectus issued in connection with the preferred stock, would not be allowed to sue under § 11 of the 1933 Act, and would be left remediless unless relief could be obtained under § 10(b) of the 1934 Act. In a footnote it was also intimated, as dicta, that the action of the common stockholders (assumed to be without an express civil remedy under the 1933 Act) could be brought under § 17 of the 1933 Act because that prohibition could also be interpreted as giving rise to an implied civil liability. The assumption that the common stockholders had no express remedy under the 1933 Act seems not to have been correct. It was doubtless not called to the Court's attention that the common stockholders did have an express remedy under the 1933 Act, viz., under § 12(2), which applies regardless whether the securities were registered (as the preferred stock was) or unregistered (as was the common stock). That erroneous assumption in no way affects the Court's conclusion that in an action maintainable under § 10(b) the

---

1. Reflecting this judicial implication of a remedy under Rule 10b–5 in favor of purchasers, the headnote of Rule 10b–5, 17 C.F.R. § 240.10b–5, was corrected to read simply: "*Employment of manipulative and deceptive devices.*" 16 F.R. 8017, Dec. 4, 1954.

plaintiff must allege and prove "fraud", however. Judge Frank wrote:

" * * * A suit under § 11 of the 1933 Act requires no proof of fraud or deceit, and such a suit may be maintained only by one who comes within a narrow class of persons, i. e., those who purchase securities that are the direct subject of the prospectus and registration statement (here the purchasers of preferred stock). But proof of fraud is required in suits under § 10(b) of the 1934 Act and Rule [10b–5], which was validly promulgated by the S.E.C. pursuant to that section. Congress reasonably, and without inconsistency, allowed suits of that sort which (1) are free of the restrictions applicable to a suit under 11 of the 1933 Act and (2) which are not confined to those persons who may properly sue under that section but which include all who are the victims of the fraud. We think that when, to conduct actionable under § 11 of the 1933 Act, there is added the ingredient of fraud, then that conduct becomes actionable under § 10(b) of the 1934 Act and the Rule, at the suit of any defrauded person, whether or not he could maintain a suit under § 11 of the 1933 Act." 188 F.2d at 786–787.

In order to understand the implications of this decision it is necessary to have in mind the over-all scheme of prohibitions and remedies created by both the 1933 and 1934 Acts.

### THE STATUTORY SCHEME

The Securities Act of 1933 contains two substantive provisions of importance, Section 17(a), quoted above, and Section 5. Section 5 makes it unlawful to sell or offer to buy any security unless a registration statement is in effect and unless accompanied or preceded by a prospectus. Mere non-disclosure of information which is required by Section 5 to be contained in the registration statement, including the prospectus, is made unlawful. Some 11 classes of securities are exempted from the registration requirement of Section 5 by Section 3, and certain types of transactions are exempted from the registration requirement of Section 5 by Section 4. The general "anti-fraud" provisions of Section 17(a), however, apply to all securities, registered or unregistered.

For most violations of these two sections the Act creates express civil remedies available to the aggrieved purchaser. Non-compliance with the registration requirements of Section 5 results in civil liability under Section 12(1). Faulty compliance therewith results in civil liability under Section 11. Any violation of Section 17(a) may bring about the imposition of injunctive or criminal sanctions sought by the S.E.C.; but only violation of Section 17(a) (2) appears to relate expressly to the civil remedy created by Section 12(2). Section 17(a) (2), we recall, is the provision which declares that "[i]t shall be unlawful * * * to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." Section 12(2) reads as follows:

"Any person who offers or sells a security (whether or not exempted by the provisions of section 3, other than paragraph (2) of subsection (a) thereof), by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, *by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading* (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission, shall be

liable to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security." [Emphasis added.]

This section clearly creates an express civil remedy for violations of § 17(a) (2), which is similarly phrased. To the extent, however, that a course of action violative of either §§ 17(a) (1) or 17(a) (3) is not also violative of § 17(a) (2), § 12(2) would appear to create no express civil remedy for that violation. Section 17(a) (2), as well as Rule 10b–5(2), is specifically aimed at half-truths. Both of these provisions are limited to half-truths, as distinct from complete omissions to disclose anything. They do not require the seller "to state every fact about stock offered that a prospective purchaser might like to know or that might, if known, tend to influence his decision." Otis & Co. v. S. E. C., 106 F.2d 579, 582 (6th Cir. 1939). Section 17(a) (2) and Rule 10b–5(2) both contain a requirement that some statement be made. Although a course of action violative of §§ 17(a) (1) or 17(a) (3) will usually be violative of § 17(a) (2)—and necessarily contain the element of *scienter* on the part of the defendant seller as well—it is possible that §§ 17(a) (1) or 17(a) (3) will encompass a scheme to defraud based upon silence, which would not always be cognizable as common-law deceit, giving effect to the principles outlined in §§ 550 and 551 of the Restatement of Torts (1938). Although § 12(2) appears to create no express civil remedy available to a purchaser who has been injured by such a scheme, the purchaser does have available an implied remedy under Rule 10b–5(1) and Rule 10b–5(3). In another respect § 17(a) (2) could be narrower than §§ 17(a) (1) and 17(a) (3). It is a specific element of the offense under § 17(a) (2) that the seller actually "obtain

money or property by means of" the false statement or half-truth. Section 17(a) (3) refers to a transaction, practice or course of business which operates *"or would operate"* as a fraud or deceit upon the purchaser. Similarly, establishment of a "scheme * * * to defraud" under § 17(a) (1) is not dependent upon proof that any victim suffered actual loss. Sections 17(a) (1) and 17(a) (3) are available to the regulatory authority to enjoin a potential fraud or to prosecute the promoters of a fraud which failed. In a private action brought under § 12(2), which is applicable only to violations of § 17(a) (2), the plaintiff must at least prove his actual loss. In actions brought by the S.E.C. under §§ 17(a) (1) and 17 (a) (3), on the other hand, it is irrelevant whether the scheme succeeded or failed.

There is one exception to the rule that violation of § 17(a) (2) results in potential civil liability under § 12(2). Misstatements or half-truths made in connection with the sale or offering of government and bank securities, as specified in § 3(a) (2), do not give rise to civil liability under § 12(2). In connection with § 17(a), then, there is a significant area in which violation of its various clauses does not give rise to an express civil remedy under § 12(2). Violations of §§ 17(a) (1), (2), and (3) in connection with the sale or offering of governmental and bank securities do not give rise to civil liability under § 12(2); neither, apparently, do violations of §§ 17(a) (1) and 17(a) (3), as such, in connection with the sale or offering of other securities. A remedy is, however, available to purchasers of government securities who have been injured by a seller's intentional or knowing violation of Rule 10b–5 (which is substantially identical with § 17(a)). Thiele v. Shields, 131 F. Supp. 416 (S.D.N.Y.1955).

Even if a seller of securities merely promulates misstatements or half-truths negligently he violates § 17(a) (2), however, and creates a situation in which the purchaser could avail himself of that which has been called the "special

right to recover for misrepresentation" created by § 12(2). Wilko v. Swan, 346 U.S. 427, 431, 74 S.Ct. 182, 184, 98 L.Ed. 168 (1955). This express civil remedy available to purchasers actually injured even by mere negligent misrepresentation is free of the burdensome requirements imposed on a plaintiff who is attempting to establish a case of common-law fraud and deceit. In a § 12(2) action, however, even where the plaintiff's allegation is only that the defendant seller has violated § 17(a) (2) by negligently making misstatements of material fact or negligently promulgating half-truths, the plaintiff is not obliged to allege or prove reliance on his part nor *scienter* on the part of the seller. Woodward v. Wright, 266 F.2d 108 (10th Cir. 1959).

The "special right to recover for misrepresentation" which was created by § 12(2) is not without a safeguard, however. In view of the fact that a plaintiff purchaser in a § 12(2) action has been relieved of the burden of alleging and proving either his own reliance or *scienter* on the part of the defendant seller, and in view of the further fact that a burden of proving his own non-negligence and lack of *scienter* has been placed on the defendant seller in a § 12(2) action (a burden unique to § 12(2), which is not carried over to actions arising under § 10 (b) of the 1934 Act), a unique counter-balancing restriction has been placed on a § 12(2) action (which is similarly not carried over to a § 10(b) action). This counter-balancing restriction is provided by § 13. With respect to purchasers' actions under § 12(2), § 13 applies a short statute of limitations: one year after discovery of the untrue or misleading statement, and not more than three years after the sale. In view of the greatly diminished burden of proof imposed on the plaintiff in a § 12(2) action it was felt appropriate, obviously, to require plaintiffs to assert their claims within a short period of time.

When a plaintiff purchaser alleges, and is obliged to prove, the employment by the seller of a "device, scheme, or artifice to defraud," however, he faces a greater burden in terms of proving the presence of the traditionally applicable elements of fraud than he would be required to bear in a § 12(2) action deriving from a violation of § 17(a) (2). The same is true when he alleges, and is obliged to prove, that the seller engaged in an "act, practice, or course of business which operates * * * as a fraud or deceit." When he alleges "device, scheme or artifice to defraud" the plaintiff is alleging a violation of both § 17(a) (1) and Rule 10b–5 (1). The violation of § 17(a) (1), as such, as we have seen, gives rise to no express civil liability under § 12(2), and, in our view, consistent with the detailed provisions of the 1933 Act, gives rise to no implied civil liability under § 17(a) itself. The violation of Rule 10b–5(1), however, consistent with settled judicial interpretation, can give rise to implied civil liability. A similar analysis is applicable to an allegation of "act practice, or course of business which operates * * * as a fraud or deceit." Such an allegation charges violation of both § 17(a) (3) and Rule 10b–5(3). The violation of § 17(a) (3), as such, gives rise to no express civil liability under § 12(2), and, in our view, gives rise to no implied civil liability under § 17(a) itself. The violation of Rule 10b–5(3), however, can give rise to implied civil liability.

The rationale for declining to imply a civil remedy for violations of § 17(a) in addition to the express civil remedy created by § 12(2), even though a civil remedy be implied for violations of Rule 10b–5, has been concisely explained by Loss:

" * * * In November 1933 Commissioner Landis of the Federal Trade Commission, who had played a prominent part in the drafting of the statute, stated in an address:

" 'The suggestion has been made on occasion that civil liabilities arise also from a violation of Section 17, the first subsection of which makes unlawful the circulation of falsehoods and untruths in connection with the sale of a security in interstate commerce or

through the mails. But a reading of this section in the light of the entire Act leaves no doubt but that violations of its provisions give rise only to a liability to be restrained by injunctive action or, if wilfully done, to a liability to be punished criminally.'

"Although this was said many years before the Kardon case, there is nothing novel about the doctrine of implied tort liability based on violation of a statute. The question is simply whether there is the same justification for implying such liability under the 1933 act as there is under the 1934 act. It is one thing to imply a private right of action under § 10(b) or the other provisions of the 1934 act, because the specific liabilities created by §§ 9(e), 16(b) and 18 do not cover all the variegated activities with which that act is concerned. But it is quite another thing to add an implied remedy under § 17(a) of the 1933 act to the detailed remedies specifically created by §§ 11 and 12. The 1933 act is a much narrower statute. It deals only with disclosure and fraud *in the sale of securities*. It has but two important substantive provisions, §§ 5 and 17(a). Non-compliance with § 5 results in civil liability under § 12(1). Faulty compliance results in liability under § 11. And § 17(a) has its counterpart in § 12(2). It all makes a rather neat pattern. Within the area of §§ 5 and 17(a), §§ 11 and 12 (unlike §§ 9(e), 16(b) and 18 of the 1934 act) are all-embracing. This is not to say that the remedies afforded by §§ 11 and 12 are complete. But the very restrictions contained in those sections and the differences between them—for example, the fact that § 11 but not § 12 imposes liability on certain persons connected with the issuer without regard to their participation in the offering and the fact that § 12(2) does not go so far in relation to § 17(a) as § 12(1) goes in relation to §

5—make it seem the less justifiable to permit plaintiffs to circumvent the limitations of § 12 by resort to § 17(a). Particularly is this so in view of the fact that § 11, together with the statute of limitations in § 13, was actually tightened in the 1934 amendments to the Securities Act." 3 Loss, Securities Regulation 1784–85 (2nd ed. 1961)

The detailed provisions of the 1933 Act with respect to a limited subject do impliedly negate the implication of civil remedies for violation of § 17(a) in addition to the express civil remedy for violation of § 17(a)(2) which was created by the statute. The comparatively broad provisions of the 1934 Act, deliberately left to be amplified and defined by the S.E.C. and the courts, lead us to believe that civil remedies can more legitimately be implied from the prohibitions of § 10(b) of the 1934 Act.

Turning to the provisions of Rule 10b–5, which implements § 10(b), we note that Rule 10b–5(1) speaks in terms of a "device, scheme or artifice to defraud." Rule 10b–5(3) speaks in terms of an "act, practice, or course of business which operates or would operate as a fraud or deceit." We do not assume that offenses against these provisions are, by any means, identical with common-law deceit. The definition of "fraud," as that or cognate terms are used in either the federal mail fraud or securities statutes, is very much attenuated. For example, "promissory fraud" is not generally cognizable as common-law deceit. It is probably not so cognizable in Colorado. Central Life Assurance Society of United States v. Mulford, 45 Colo. 240, 100 P. 423 (1909); Leece v. Griffin, Colo., 371 P.2d 264 (1962); Bell Press, Inc. v. Phillips, 147 Colo. 461, 364 P.2d 398 (1961). Promissory fraud is, however, cognizable as "fraud" within the meaning of the mail fraud and securities statutes, as is made clear by the decisions in the cases of Durland v. United States, 161 U.S. 306, 313–314, 16 S.Ct. 508, 40 L.Ed. 709 (1896); Oklahoma-Texas Trust v. S. E. C., 100 F.2d 888, 894 (10th Cir. 1939);

and United States v. Grayson, 166 F.2d 863, 866 (2nd Cir. 1948). In the Grayson case the rule applicable to these forms of statutorily defined "fraud" was aptly put: " * * * [T]o promise what one does not mean to perform, or to declare an opinion as to future events which one does not hold, is a fraud." It is probably easier, then, for a plaintiff to prove that he has been "defrauded" in violation of the securities statutes than to prove that the defendant perpetrated common-law deceit.

 In the context of proof of criminal violation of either §§ 17(a) (1) or 17(a) (3) (or the corresponding clauses of Rule 10b–5: 10b–5(1) and 10b–5(3)) the Tenth Circuit apparently still requires that the plaintiff prove *scienter* on the part of the defendant. Intent is essential to a "scheme to defraud." Troutman v. United States, 100 F.2d 628, 632 (10th Cir. 1938), cert. denied, 306 U.S. 649, 59 S.Ct. 590, 83 L.Ed. 1047; Rice v. United States, 149 F.2d 601, 603 (10th Cir. 1945). Since the civil remedy for violation of any of the provisions of Rule 10b–5 is implied only from an established violation of a criminal statute, it follows that a private litigant claiming to have been damaged as a result of a defendant's violation of Rule 10b–5(1) or (3) must also prove intent. The rule in the Ninth Circuit, we note, is to the contrary. Ellis v. Carter, 291 F.2d 270, 274 (9th Cir. 1961).

 What of a seller's violation of Rule 10b–5(2), however; does this give rise to implied civil liability? If a plaintiff purchaser suing under Rule 10b–5(2) were required to allege and prove nothing more than he is required to allege and prove in a § 12(2) action we would be persuaded by the reasoning of Judge Kirkpatrick in Rosenberg v. Globe Aircraft Corporation, 80 F.Supp. 123 (E.D. Pa.1948), that:

> " * * * It cannot be supposed that Congress intended to abolish these regulations and limitations [coupled to a § 11, § 12(1) or § 12(2) action] when it enacted Sec. 10 of the Act of 1934. By any reasonable rule of statutory interpretation, it would require either an express repeal or an implication of repeal so strong as to be inescapable. The two Acts are unquestionably in pari materia and must be construed together to make a consistent whole. Looking at them as one statute it is simply not possible that Congress, having prescribed in elaborate detail procedural requirements which must be fulfilled in order to enforce civil liability attaching to a carefully defined type of violation, would have casually nullified them all in a later section. Nor can an intention to do so be deduced from the general provisions of Sec. 29 of the Act of 1934, * * * which is, 'The rights and remedies provided by this chapter shall be in addition to any and all other rights and remedies that may exist at law or in equity * * *.' As a matter of fact 'this chapter' does not provide any remedies for the violation of Sec. 10(b). Those remedies arise by the general law of torts, which attaches civil liability to the violation of a criminal statute. The point in Kardon v. National Gypsum Co., D.C., 69 F.Supp. 512 [E.D. Pa.1946], was not that the Act itself provided a civil remedy, but that there was nothing in it to indicate that Congress intended to withhold from injured parties the right to recover damages which normally attends violations of a criminal statute." 80 F.Supp. at 124–125.

and conclude that a purchaser who alleges and proves no more in an action arising under Rule 10b–5(2) than he is required to prove in a § 12(2) action, viz., mere negligent misstatement, is relegated to the special remedy created by § 12(2), for, as Judge Coxe reasoned in Montague v. Electronic Corporation of America, 76 F.Supp. 933 (S.D.N.Y.1948):

> "The settled rule of statutory construction is that, where there is a special statutory provision affording a remedy for particular specific cases

and where there is also a general provision which is comprehensive enough to include what is embraced in the former, the special provision will prevail over the general provision, and the latter will be held to apply only to such cases as are not within the former." 76 F.Supp. at 936.

In our view, however, consistent with the expression of opinion of Judge Frank in Fischman v. Raytheon Mfg. Co., 188 F.2d 783 (2nd Cir. 1951):

> "But proof of fraud [by the plaintiff] is required in suits under § 10 (b) of the 1934 Act and Rule [10b–5] * * *. We think that when, to conduct actionable under [one of the express civil remedy provisions] of the 1933 Act, there is added the ingredient of fraud, then that conduct becomes actionable under § 10(b) of the 1934 Act and [Rule 10b–5], at the suit of any defrauded person, whether or not he could maintain a suit under [the express civil remedy provision] of the 1933 Act." 188 F. Supp. at 786.

it can be concluded that a plaintiff purchaser bringing an action under Rule 10b–5(2) must plead and prove something more than he would be obliged to plead and prove in a § 12(2) action. In a § 12 (2) action the burden of proof as to *scienter* is shifted by statutory command to the defendant; in an action brought under § 10(b) the plaintiff must establish that the defendant has violated a criminal statute. In a § 12(2) action the plaintiff need not prove that his damage was proximately caused by reliance on the defendant's misstatement or utterance of a half-truth; by command of statute he must prove only, rather, that he did not know the truth which would counteract the untruth or half-truth promulgated by the defendant. In the absence of such an explicit statutory shifting of the burden of proof the plaintiff in a § 10(b) action must be presumed to continue to bear the normal burden of proof. It is the plaintiff who must show, consistent with the principle of § 286 of the

Restatement of Torts (1934), which gives rise to civil liability under § 10(b):

1. That the defendant violated certain explicit provisions of Rule 10b–5;
2. That the plaintiff was damaged;
3. That the defendant's violation was a proximate cause of the plaintiff's damage;
4. That the plaintiff did not so conduct himself as to disable himself from maintaining an action;
5. That the interest of the plaintiff which was allegedly invaded is one which the Rule was intended to protect.

Since the plaintiff purchaser must allege and prove more in an action brought under § 10(b), alleging a violation of Rule 10b–5(2), than he must allege and prove in an action brought under § 12(2), alleging violation of § 17(a) (2), we conclude that he is privileged to maintain an action under Rule 10b–5(2) to right the same wrong as is dealt with by § 17 (a) (2) if he undertakes to bear the greater burden of proof imposed upon him in a § 10(b) action.

As a possible caveat to Judge Frank's generalization that "fraud," albeit not common-law fraud (Joseph v. Farnsworth Radio & Television Corp., 198 F.2d 883, 887 (2nd Cir. 1952) (dissenting opinion of Frank, J.)), must be proved by the plaintiff in a § 10(b) action it must be noted that neither § 17(a) (2) nor Rule 10b–5(2) purports on its face to require the plaintiff to prove *scienter* on the part of the defendant. As a matter of practice the S.E.C., when it brings actions under either of these prohibitory provisions, does not appear to invoke any applicable sanctions against mere negligent misstatement. 3 Loss, Securities Regulation 1423–24; 1442, n. 45 (2nd ed. 1961). In a § 12(2) action the burden of proof respecting *scienter* is expressly shifted, by statutory direction, to the defendant seller. In an action brought under § 10(b) and Rule 10b–5(2), however, there is no reason whatsoever for shifting the burden of proof as to any

element of the offense which must be established. The plaintiff, whether he be a seller or a purchaser, bears the burden of proving a violation of a criminal statute in order that a civil remedy for his benefit may be implied therefrom. It would be entirely foreign to this scheme to require the defendant to prove that he had *not* negligently, knowingly or intentionally violated the law in the absence of an express statutory provision requiring that extraordinary result. To establish a criminal violation of Rule 10b–5(2), in our view, it is essential that some element of *mens rea,* however attenuated, be established by the plaintiff. It follows that civil liability for intentional or knowing violation of Rule 10b–5(2) can legitimately be implied; but we have grave doubts whether Rule 10b–5(2) is a permissible implementation of § 10(b)— which speaks in terms of using or employing a "manipulative or deceptive device or contrivance" unless some element of *scienter,* albeit attenuated from traditional common-law deceit, be read into it. Howard v. Furst, 140 F.Supp. 507, 512, n. 17 (S.D.N.Y.1956); 3 Loss, Securities Regulation 1766 (2nd ed. 1961). We have no doubt but that "manipulative or deceptive device or contrivance" includes various types of "fraud" which would not always be cognizable as common-law deceit, e. g., a "fraud" based wholly on a failure to speak in a non-fiduciary situation; or "promissory fraud"—as distinct from the making of material misstatements respecting past or present fact. Nevertheless, the statutory language, "manipulative or deceptive device or contrivance," implies conduct which is, at the very least, either knowing or intentional.

 We do not understand, however, that a knowing or intentional violation of Rule 10b–5(2) must necessarily involve actual knowledge. Even in common-law fraud actions in Colorado, for example, it is clear that a representation made in reckless disregard of its truth or falsity is legally equivalent to a representation made with actual knowledge

of its falsity. Otis & Co. v. Grimes, 97 Colo. 219, 48 P.2d 788, 789 (1935). This general rule of law, equally applicable here in a tort action brought in consequence of alleged violation of Rule 10b–5(2), is well expressed in the early opinion of the Colorado Supreme Court in Sellar v. Clelland, 2 Colo. 532, 544 (1875):

"In regard to representations generally, I conceive it to be necessary for the party relying on the representations to show not only that they are false, but that the party making the same knew them to be false. But when one has made a representation positively, or professing to speak as of his own knowledge on the subject, the intentional falsehood is disclosed, and the intention to deceive is also inferred, or at all events, this is so when the matters falsely represented are peculiarly within the knowledge of the party making them, and are not known to the party to whom they are made. In such a case, the proof would seem to be complete when it was shown that the defendants made the representations; that they were made to induce plaintiffs into the contract; that, relying upon the same, they did enter into the contract; that the representations were false; that the plaintiffs sustained damage, and that such damage was occasioned by reason of the falsity of such representations."

We do not understand, either, that a plaintiff maintaining an action under § 10(b) for violation of Rule 10b–5(1) or (3) is precluded from asserting that the "fraud" practiced upon him was "constructive fraud." From the totality of events a scheme to defraud may be deduced. Such is typically the case with respect even to common-law deceit; in Colorado law, for example, Dittbrenner v. Myerson, 114 Colo. 448, 167 P.2d 15 (1946); United States Nat. Bank of Denver v. Bartges, 122 Colo. 546, 224 P. 2d 658 (1950). Where the "scheme to defraud" or "course of business which operated as a fraud" is such as would be

cognizable as "constructive fraud" it is meaningless to focus on reliance on particular misstatements of present fact.

In order to make out a violation of Rule 10b–5(2), however, it is necessary to focus on reliance on particular affirmative misstatements and half-truths knowingly or intentionally promulgated. Administrative practice under Rule 10b–5(2) has recognized, we believe, the impropriety of criminally punishing mere negligent misstatement. Where a private litigant alleges violation of Rule 10b–5(2) we believe that it is also incumbent upon him to allege and establish that the defendant's violation of Rule 10b–5(2) was knowing or intentional. It is otherwise, of course, with respect to a § 12(2) action alleging violation of § 17(a) (2). If an aggrieved purchaser wishes to be free of the burden of proving his own reliance and the further burden of proving that the defendant seller acted knowingly or intentionally he is free to bring an action under § 12(2) to right the same wrong

## DISPOSITION OF THE CLAIMS

Turning, then, to the specific allegations in the instant case, we are prepared to evaluate the sufficiency of the claims made in the complaint. The first claim, taken by itself, alleges nothing more than a violation of Rule 10b–5(2). This claim is viewed by the plaintiffs as their main claim, in connection with which the acts of the defendants which are complained of are detailed. This claim, the only one which is self-contained, fails to allege that untruths or half-truths were promulgated knowingly or intentionally. This claim should be dismissed because, as it is presently drafted, it alleges and offers to prove nothing more than is required in a § 12(2) action alleging a violation of § 17(a) (2). The first claim, as noted, contains detailed allegations which are incorporated by reference into the other four claims. The plaintiffs, apparently wishing to insure themselves against inadvertent failure to include in a particular claim any necessary allegation, have adopted the peculiar device of including in their prayer for relief this language:

"1. Each statement and allegation in each count of this Complaint shall be considered as repeated and realleged and incorporated by this reference into any other count of this Complaint where such incorporation shall be or appear necessary to the validity of the cause of action or claim for relief therein stated."

Shall appear necessary to whom? The pleader must define and delimit his claim! This prayer could even be interpreted as an attempt by the plaintiffs to incorporate every allegation of every claim into every other claim. We cannot give effect to this attempted cross-incorporation. We do, however, recognize that the plaintiffs have legitimately incorporated the allegations of the first claim into the second and fifth claims, which also allege violations of Rule 10b–5.

The second claim, as drafted, alleges a violation of Rule 10b–5(2). By incorporating the allegations of the first claim into the second claim the plaintiffs do allege that they have been damaged; that the defendants violated some provision of Rule 10b–5; and that their damage resulted from those violations. The language used in the second claim includes an allegation that the defendants knowingly or intentionally "defrauded" the plaintiffs within the meaning given that word in the context of the federal securities statutes. The second claim thus can be read to state a cause of action arising from defendants' violation of § 10(b) and Rule 10b–5(2). It is inappropriate to dismiss that claim. As to the second claim the defendants' motion to dismiss should be denied.

The fifth claim, as drafted, alleges violations of Rule 10b–5(1) and (3). By incorporating the allegations of the first claim into the fifth claim the plaintiffs do allege that they have been damaged; that the defendants violated some provisions of Rule 10b–5; and that their damage resulted from those violations.

Implicit in the language used in the fifth claim, which paraphrases Rule 10b–5(1) and (3), is an allegation that the defendants knowingly or intentionally "defrauded" the plaintiffs within the meaning given that word in the context of the federal securities statutes. Because the fifth claim can be read to state a cause of action arising from violation of § 10(b) and Rule 10b–5(1) and (3) it is inappropriate to dismiss that claim. As to the fifth claim the defendants' motion to dismiss should be denied.

■ For reasons given earlier the fourth claim, alleging negligence in failing to make full disclosure in a non-fiduciary setting, should be dismissed.

Without dismissing the third claim we reserve judgment on the question whether that claim will ultimately be seen to state a claim upon which relief can be granted.

## THE MOTIONS FOR MORE DEFINITE STATEMENT AND FOR SEPARATE STATEMENT

■ Inasmuch as the defendants' motion to dismiss is being denied with respect to the second and fifth claims it becomes necessary to deal with their alternative motion for a more definite statement. The motion should be granted. Compliance with the requirements of Rule 9(b) of the Federal Rules of Civil Procedure can be ordered in connection with a § 10(b) claim. Seward v. Hammond, 8 F.R.D. 457, 459 (D.Mass. 1948); Kardon v. National Gypsum Co., 69 F.Supp. 512, 515 (E.D.Pa.1946); Fischman v. Raytheon Mfg. Co., 188 F. 2d 783, 787, n. 6 (2nd Cir. 1951). The decision in the case of Bailey v. Huntington Securities Co., Inc., 35 F.R.D. 169 (S.D.N.Y. 1963), strongly relied on by the plaintiffs for the proposition that they need not particularize their claim merely because they allege "conspiracy", does not negate the generally applicable proposition that a complaint stating a § 10(b) claim must meet the requirements of Rule 9(b). The Bailey case does not even consider whether Rule 9(b) applies, or what its requirements are.

■ The complaint in the instant case does not satisfy the requirements of Rule 9(b). The theory of Rule 9(b) is that the defendant in a case wherein the plaintiff alleges either fraud or mistake —unlike defendants in other actions— should be rather specifically apprised by the plaintiff's pleading of the occasion on which and the circumstances under which he allegedly defrauded a particular plaintiff. It is obvious that a plaintiff may not be privy to the workings of a group of defendants who have acted in concert to defraud him, but he can at least identify the particular defendants who allegedly dealt directly with him, and he can describe the circumstances under which particular defendants dealt directly with him. Under Rule 9(b) the plaintiff can not be required to allege with particularity the manner in which individual defendants acted in concert, but there is no justification for the secreting of information identifying the actors in the drama and the occasions on which they directly confronted the plaintiffs—information which, in this case, appears to be more readily available to the plaintiffs, acting as a united group, than to the disparate individual defendants, scattered over a wide area, who appear here represented by different counsel.

■ Rule 9(b) does not, however, require the pleading of detailed evidentiary matter, nor does it require any particularity in connection with an averment of intent, knowledge, or condition of mind. It only requires identification of the circumstances constituting fraud or mistake. That requirement means, in the instant case, that individual plaintiffs should identify particular defendants with whom they dealt directly, and from whom they purchased stock; that individual plaintiffs should designate the occasions on which affirmative misstatements were allegedly made to them—and by whom; and that individual plaintiffs should designate what affirmative mis-

statements or half-truths were directed to them—and how.

 Two subsidiary motions by individual defendants remain for consideration also. Defendant C. Douglas Andrews has moved for a Bill of Particulars. The simple answer to that request is that the Federal Rules make no provision for a Bill of Particulars. A more definite statement can be required, but not a Bill of Particulars. Rule 12(e), F.R. Civ.P. The motion should be denied.

 Defendant Milo Steele moves that the complaint be dismissed in its entirety as to him because of improper venue. It is defendant's position that venue lies only in the District of South Dakota, wherein defendant resides, transacts business, and was served, or in the District of Kansas, where all alleged sales of securities to the plaintiffs occurred. The applicable statutory venue provision is found in § 27 of the 1934 Act, which provides that suit may be brought either in the district "wherein any act or transaction constituting the violation occurred" or in the district "wherein the defendant is found or is an inhabitant or transacts business." Within the contemplation of this provision it seems to us to be at least arguable that certain acts or transactions alleged to constitute a violation of Rule 10b–5(1) and (3), in which defendant Steele is alleged to have participated as a director of United Underwriters, Ltd., did occur in Colorado. Since this is the allegation of the complaint it appears inappropriate to dismiss the complaint in its entirety as against defendant Steele. This motion also should be denied.

## THE STATUTE OF LIMITATIONS

 There remains for consideration the question which statute of limitations applies in the instant case. The surviving claims are both claims which arise under § 10(b). With respect to § 10(b) actions Congress has provided no statute of limitations, and there is no federal statute of limitations for civil actions generally. In this situation some state statute of limitations will be applied to § 10(b) actions, depending where the action is brought. Holmberg v. Armbrecht, 327 U.S. 392, 395, 66 S.Ct. 582, 90 L.Ed. 743 (1946). In addition, the affirmative defense of laches is also available to a defendant in a § 10(b) action. Royal Air Properties, Inc. v. Smith, 312 F.2d 210, 214 (9th Cir. 1962). We face the question, however, which Colorado statute of limitations applies to a § 10(b) action.

 In practically all respects a § 10(b) action, especially since proof of *scienter* is required, is similar to a state action "on the ground of fraud," for which C.R.S. '53, 87–1–10 provides a three year statute of limitations. More exactly, a § 10(b) action arising from alleged violation of Rule 10b–5(2) is similar to an action "on the ground of fraud." A § 10(b) action arising from alleged violation of Rule 10b–5(1) and (3) might, on certain facts, more accurately be deemed similar to an action "based upon implied or constructive fraud," for which C.R.S. '53, 87–1–9(1) also provides a three year statute of limitations.

A § 10(b) action might alternatively, but much less plausibly, in our view, be regarded as one for which the applicable statute of limitations is given by C.R.S. '53, 87–1–9(2), the residuary clause, which provides that a three year statute of limitations shall apply to "[a]ll other actions of every kind for which no other period of limitation is provided for by law." This residuary three year statute of limitations must take precedence over the two year statute of limitations which the Colorado legislature, by C.R.S. '53, 87–1–7, subsequently purported to impose on "[a]ll actions upon a liability created by a federal statute other than for a forfeiture or penalty for which actions no period of limitations is provided in such statute." The three year Colorado residuary statute of limitations was established by statute in 1939. Subsequent to this enactment the three year residuary statute of limitations might arguably have applied to a § 10(b) action. The special two year statute of

limitations made applicable in 1943 to "actions upon a liability created by a federal statute * * * for which actions no period of limitations is provided in such statute" would seem to be, on its face, an unconstitutional discrimination against a multitude of federal claims to which a shorter statute of limitations was purportedly applied for no other reason than that they were federal claims, leaving a three year statute of limitations for residuary state claims. Cf. Wolf Sales Co. v. Rudolph Wurlitzer Co., 105 F.Supp. 506 (D.Colo.1952).

Our conclusion is that a three year statute of limitations applies to a § 10(b) action brought in the District of Colorado in any event.

It is argued by the defendants that no unconstitutional discrimination against a § 10(b) action would be created if the two year statute of limitations of C.R.S. '53, 87–1–7 were applied. This because the Colorado Securities Act, in C.R.S. '53, 125–10–21(5) (1961 Supp.), applies a two year statute of limitations to actions arising under that Act. We regard that statute of limitations as one which is necessarily restricted in its applicability to violations of that Act, however. Civil actions arising under the Colorado Securities Act (to the extent relevant here in comparison with a § 10(b) action) are strictly analogous to a § 12(2) action —but not to either a § 10(b) action alleging violation of Rule 10b–5(1) and (3), nor to a § 10(b) action alleging violation of Rule 10b–5(2) when proof of *scienter* and reliance is required.

Plaintiffs argue, on the other hand, that a § 10(b) action could and should be characterized as an "action on the case" for which C.R.S. '53, 87–1–11 provides a six year statute of limitations. In view of the very close similarity of a § 10(b) action to an action "on the ground of fraud," however, we find this characterization unacceptable. We note that in Fischman v. Raytheon Mfg. Co. where Judge Frank was called on to characterize a § 10(b) action for purposes of determining which state statute of limitations applied, he determined that

the choice as to statutes of limitation was between New York Civil Practice Act, § 48(2) [liability created by statute] or New York Civil Practice Act, § 48(5) [fraud]. In Fratt v. Robinson, 203 F.2d 627, 37 A.L.R.2d 636 (9th Cir. 1953) and Connelly v. Balkwill, 174 F.Supp. 49 (N.D.Ohio 1959), both courts held that the applicable statute of limitations was the one for fraud, rejecting the contention that the liability was one created by statute. The reasoning was that a liability created by statute is a liability which would not exist but for the statute. Liability for most acts which would make out a § 10(b) cause of action does exist even in the absence of statute. This appears to be true in Colorado, also, as we have earlier noted. Most acts violative of § 10(b) would be readily cognizable in Colorado as "constructive fraud", or, indeed, as traditional common-law fraud.

The applicable statute of limitations in the instant case would, then, seem to be three years. This, together with laches, is available as an affirmative defense. On the state of the pleadings with which we here deal the Court will not undertake, however, to dismiss those particular money claims which might arguably be barred by the statute of limitations, primarily because it cannot fairly be determined at this time, in view of the fact that the parties have not addressed themselves to the question, whether the applicable state statute of limitations is ever tolled, or whether, if the statute of limitations be subject to tolling, it has been tolled in particular instances involved here.

For the reasons given in the foregoing opinion, it is, therefore,

ORDERED:

1. Defendants' motion to dismiss is denied as to claims two, three and five;

2. Defendants' motion to dismiss is granted as to claims one and four;

3. Defendants' motion to strike all claims other than the first is denied;

4. Defendants' motion for more definite statement is granted;

5. Defendants' motion for separate statement is granted;

6. The motion of defendant C. Douglas Andrews for a Bill of Particulars is denied;

7. The motion of defendant Milo Steele to dismiss the complaint in its entirety as to him is denied;

and

8. Defendants' motion to dismiss those money claims itemized in paragraph six of the first claim which might be barred by the statute of limitations is denied.