**FINANCIAL INDUSTRIAL FUND, INC.,**
a Maryland corporation, Plaintiff,

v.

**McDONNELL DOUGLAS CORPORA-TION, a Maryland corporation, and Merrill Lynch, Pierce, Fenner & Smith, Inc., a Delaware corporation, Defendants,**

and

**McDONNELL DOUGLAS CORPORA-TION, Third-Party Plaintiff,**

v.

**INVESTORS MANAGEMENT COMPA-NY, Inc., and Anchor Corporation, Third-Party Defendants.**

No. C–1257.

United States District Court,
D. Colorado.

Aug. 13, 1970.

Modesitt & Shaw, by Leland E. Modesitt and Richard H. Shaw, Denver, Colo., for plaintiff; Holland & Hart, by James L. White, John F. Kelly and Edwin S. Kahn, Denver, Colo., for defendant McDonnell Douglas Corporation.

Holme, Roberts & Owen, by Peter H. Holme, Jr., Denver, Colo., and Brown, Wood, Fuller, Caldwell & Ivey, by James B. May and Roger J. Hawke, New York

City, for defendant Merrill Lynch, Pierce, Fenner & Smith, Inc.

Winner, Berge, Martin & Clark, by James A. Clark and Warren O. Martin, Denver, Colo., for third-party defendants.

## MEMORANDUM OPINION AND ORDER

WILLIAM E. DOYLE, District Judge.

Plaintiff, a mutual fund, has instituted the present action seeking damages for alleged violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder by the Securities and Exchange Commission, 17 C.F.R. § 240.10b–5. The claim is that damage resulted from *first*, defendants' unlawful manipulation of the price of McDonnell Douglas stock and, *secondly*, from illegal use of inside information in connection with the purchase or sale of said stock. Defendants Merrill Lynch, Pierce, Fenner & Smith, Inc. (hereinafter referred to as Merrill Lynch) and McDonnell Douglas Corporation have both moved for summary judgment on the ground that there is no genuine issue as to any material fact and that they are entitled to judgment as a matter of law. F.R. Civ.P. 56(c).

Plaintiff makes the following allegations in support of its claims:

(1) Early in 1966, McDonnell Douglas began consideration of a refinancing program which would involve calling and retiring approximately $28 million of outstanding four percent convertible debentures. Merrill Lynch was to act as agent of McDonnell Douglas in connection with the call of the outstanding debentures and the underwriting of the new debentures (success of the retirement program and success of a new offering depended on maintaining the price of the stock at a high level);

(2) Although the economic outlook for McDonnell Douglas in 1966 seemed rosy at the beginning of that year, its financial condition deteriorated substantially in the second quarter of 1966 due to increasing backlogs resulting from short-

ages of materials and skilled labor and also due to incorrect cost estimates on the production of DC–9 aircraft. Plaintiff contends that the public statements by McDonnell Douglas and Merrill Lynch as to the former's financial position failed to reflect this turn of events;

(3) Merrill Lynch supplied information about the true financial condition of McDonnell Douglas to favored customers prior to the public release of this information on the morning of June 24, 1966;

(4) On June 22, 1966 and June 23, 1966, plaintiff purchased 80,000 shares of common stock of McDonnell Douglas at $89.00 per share. Plaintiff made these purchases without knowledge of the true facts about McDonnell Douglas' financial situation. When McDonnell Douglas' financial picture was made public, the price of its common stock began to drop. Between July 1 and July 8, 1966, plaintiff sold its interests in McDonnell Douglas for approximately $65.00 per share, thus incurring a loss of $1,969,266.

Based on the above allegations plaintiff has described two alternative theories for recovery. *First,* it is contended that McDonnell Douglas, by itself or in concert with Merrill Lynch, deliberately withheld from the public, including plaintiff, material information as to its economic condition and did so in order to manipulate the price of its stock. Plaintiff claims that this manipulation was undertaken in order that the common stock into which the four percent debentures were convertible would be maintained at a level in excess of the conversion price stated in the debentures, thus allowing said debentures to be retired without cash outlay. *Second,* plaintiff asserts that the release of inside information by Merrill Lynch to its favored customers itself constituted a violation of Rule 10b–5 under the doctrine of Securities and Exchange Commission v. Texas Gulf Sulphur Co., 401 F.2d 833 (2d Cir. 1968).

■■ As to plaintiff's first theory, based upon manipulation of the price of

**44**

McDonnell Douglas stock, w⸍ are of the opinion that there are disputed issues of material fact which render summary judgment inappropriate. For example, since private actions under Rule 10b–5 are in large part governed by the same tort principles applicable to fraud, intent to defraud or its equivalent, or *at least* knowledge that statements disseminated to the public are false or misleading, must appear from the evidence in order to make out a violation. Indeed, stock price manipulation imports a knowing course of conduct. *See, e. g.,* Trussell v. United Underwriters, Ltd., 228 F. Supp. 757 (D.Colo.1964). Generally, summary judgment is inappropriate where issues of motive, intent or knowledge are presented. 6 Moore's Federal Practice ¶ 56.17(41.–2). Defendants claim that the transactions which occurred between January 1 and June 23, 1966, as set forth in plaintiff's complaint, are insufficient on their face to support an inference that defendants intended to defraud or had knowledge that their informational releases to the public were false or misleading. We believe that the facts set forth in plaintiff's complaint are such that reasonable men might differ on the inferences to be drawn from them with regard to intent and/or knowledge. Resolution of conflicting inferences is, of course, the duty of the trier of fact, and hence summary judgment cannot be granted. *See, e.g.,* Empire Electronics Co., Inc. v. United States, 311 F.2d 175 (2d Cir. 1962).

The question of intent or knowledge is not the only disputed material issue of fact which remains. Also to be determined is whether Merrill Lynch played any part in any manipulation which is shown to have occurred. Further, the question whether plaintiff relied on any misrepresentations of the defendants or either of them is yet to be resolved.

Turning to plaintiff's second theory, the theory of tipping and insider trading, defendants contend that as a matter of law no claim for relief exists under the facts alleged by plaintiff. It is doubtful that tipping which results in insider trading on a national exchange can support a private action for damages under 10b–5. Where a corporation withholds material information from the public, a certain number of persons trading on the basis of insufficient information will be injured. This injury is not increased if corporate insiders who possess inside information are trading on the exchange at the same time. It is the incomplete information, not insider trading, which is the proximate cause of the damage to other investors.

■ Thus, the crucial question is when the corporation has a duty to disclose information to the public. As we read those cases involving private actions under Rule 10b–5, nondisclosure may constitute a violation of the Rule when it is part of a plan of manipulation or scheme to defraud. *See, e.g.,* Reynolds v. Texas Gulf Sulphur Co., 309 F.Supp. 548 (D.Utah 1970).

Securities and Exchange Commission v. Texas Gulf Sulphur Co., *supra,* does indicate that the use of inside information may constitute a violation of Rule 10b–5. This and similar cases were, however, actions instituted by the Commission and hence the question of the causal connection between insider trading and injury to specific investors was not considered. Thus, these cases seem to be of limited applicability.

However, we need not determine finally at this time whether a claim for relief does or does not exist under the tipping theory. The existence of tipping, if proven, may in any event have some probative value in connection with the claim of manipulation, and thus plaintiff will undoubtedly wish to present evidence on the issue of tipping in any event. We reserve ruling as to the validity of the tipping theory until trial.

For the foregoing reasons the motions for summary judgment should be and the same are hereby denied.

The case will proceed to trial as scheduled commencing at 9:30 a.m. on Monday, August 17, 1970.